## COMMONWEALTH *vs.* STEPHEN MILLER.

Suffolk.  February 27, 1986. — September 8, 1986.

Present: BROWN, KASS, & WARNER, JJ.

*Dangerous Weapon. Statute,* Construction. *Words,* "Dirk knife."

A defendant charged under G. L. c. 269, § 10 (*b*), with possession of a
   dangerous weapon, a dirk knife, was entitled to a required finding of
   not guilty, inasmuch as the knife, a heavy, oversized version of a folding
   pocket knife or jack-knife, discovered in the defendant's pocket in a
   closed position, did not share enough of the characteristics of a stabbing
   weapon to fit the recognized definition of a dirk knife, a term not defined
   in the statute. [694-697]

COMPLAINT received and sworn to in the Boston Municipal
Court Department on June 3, 1985.

In the jury session, the case was tried before *George A.
O'Toole, Jr., J.*

*Richard A. Cutter* for the defendant.

*Robert N. Tochka,* Assistant District Attorney, for the Com-
monwealth.

BROWN, J. The defendant was convicted of carrying a
dangerous weapon prohibited by G. L. c. 269, § 10 (*b*), as
amended through St. 1983, c. 516, § 2; to wit, a "dirk knife."
On appeal he claims that his motion for a required finding of
not guilty was improperly denied and that the jury instructions
regarding the definition of a dirk knife were erroneous. We
reverse the conviction.

The statute does not define the term "dirk knife." As is the
usual practice in interpreting criminal statutes, we construe the
term strictly.[1] See *Commonwealth* v. *Crosscup,* 369 Mass.

---

[1] It is clear that the Legislature did not intend to encompass all knives in
its enumeration of "per se" dangerous weapons. The earliest antecedent of

228, 234 (1975) ("ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity"); *Commonwealth v. Lupo,* 394 Mass. 644, 649 (1985) (same). A dirk is a long straight-bladed dagger or short sword usually defined by comparison with the ceremonial weapons carried by Scottish highlanders and naval officers in the Eighteenth and Nineteenth Centuries. See Webster's Third New International Dictionary 642 (1971). A "dirk knife" is a "clasp knife," or large pocket knife, "having a large blade like that of a dirk." *Ibid.* It is apparent that the trial judge denied the defendant's motion for a required finding of not guilty, and later instructed the jury, on the basis of this definition.

The Webster definition is wanting in blade-related details. It is, therefore, an insufficient basis in itself for any determination of whether the defendant's knife has a blade like a dirk. Other sources, however, allow a comparison of the blade on the defendant's knife with the characteristic features of both the Highland and the naval dirk. See, e.g., Military Collectables (O'Neill ed. 1983) and Weapons (St. Martins Press 1980), which provide illustrations and detailed descriptions of these dirks and show tapered blades ranging in length from 7.9 to 11.9 inches and in width from one to one and a half inches.[2]

what is now § 10 (*b*), St. 1906, c. 172, § 2, prohibited the carrying of "any stiletto, dagger [or] dirk-knife." In 1957, the Legislature broadened the list of per se dangerous knives in § 10 (*b*) to include "any knife having a double-edged blade, or a switch knife, or any knife having an automatic spring release device by which the blade is released from the handle, having a blade of over one and one-half inches." St. 1957, c. 688, § 23.

[2] According to the Encyclopedia Britannica, dirks had·stopped being "all-purpose" knives and were limited to ceremonial use by 1850. Encyclopedia Britannica 484 (1967 ed.). The term "dirk" was originally inserted in the statute in 1906. At that time, it is fair to assume that the Legislature was still familiar with dirks. It should be noted that the term now may not have a generally accepted meaning which can be communicated to the contemporary jury (or judge) by a mere reference to a costume not now readily pictured without reference to highly technical sources. The legislative intent could more easily be determined in cases like this one if the Legislature were to adopt a minimum blade length for a "per se" dangerous knife, as they have in the case of knives with spring releases. As to how this question is handled in other jurisdictions, see, e.g., Mo. Rev. Stat. § 571.010 (Supp. 1984) (greater than 4 inches); Neb. Rev. Stat. § 28-1201 (2) (1985) (greater than 3½ inches).

Such knives "are designed and are useful almost exclusively for stabbing." *State* v. *Pruett,* 37 Or. App. 183, 187 (1978). To facilitate this purpose the blade is usually double-edged and symmetrical. See 26A C.J.S. Dirk (1956).

Defining a dirk knife in these terms is consistent with the purpose of G. L. c. 269, § 10 (*b*). See *Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366, 369 (1977). That purpose is to outlaw the carrying of those knives which are primarily designed for stabbing human beings or for other unlawful objectives. The purpose is apparent from the types of knives — switch blade, double edged, stiletto, and dagger — prohibited by § 10 (*b*) and is characteristic of statutes prohibiting the carrying of dangerous weapons. See and compare cases from other jurisdictions which consider analogous per se statutes: *People* v. *Brown,* 406 Mich. 215, 220-221 (1979) (weapons generally considered dangerous per se are designed for the purpose of bodily assault); *State* v. *Pye,* 225 La. 365 (1954) (pocket knife not customarily used as dangerous weapon); and *State* v. *Pruett,* 37 Or. App. at 188 (pocket knife not transformed into dagger by locking mechanism). Such statutes recognize that while most knives can be used to inflict serious bodily harm, many knives are commonly utilized in innocent and useful ways which bear no relation to their use as weapons.

The defendant's knife is a heavy, oversized version of a folding pocket knife or jack-knife.[3] Pursuant to a lawful search, conducted for reasons not relevant here, the knife was discovered in the defendant's pocket, in the closed position. With the blade folded into the handle, the knife is 6½ inches long by 1½ inches wide. In contrast to other quick release knives enumerated by the statute, it does not open quickly or easily. Once opened, and locked rigidly in position, it looks like a dagger. Unquestionably if it had been discovered open, in the

[3] For an example of a statute in another jurisdiction which explicitly excludes the ordinary folding pocket knife from the category of per se dangerous weapons see Md. Ann. Code art. 27, § 32 (1982). Because of its size the instant knife cannot reasonably be viewed as an "ordinary" pocket knife.

defendant's hand or in his pocket, it could have been deemed to be a dangerous weapon. Cf. *People* v. *Bain,* 5 Cal. 3d 839, 844, 850 (1971) (blade found open in locked position in the defendant's pocket — the five-inch blade was tapered to a sharp point); *Armendariz* v. *Texas,* 396 S.W.2d 132 (Tex. Crim. App. 1965) (knife in defendant's pocket in the locked open position, was a "dagger").

The defendant's blade is five inches by one and one-half inches, single edged and asymmetrical. It certainly can cut and is a formidable and menacing weapon when opened, but it is neither tapered nor readily adaptable (from its folded form) for use as a stabbing weapon. See *Bivens* v. *State,* 133 Tex. Crim. 604 (1938) (similarly shaped blade in scabbard not a dirk). It is not long enough to fit the usual definition of a dirk-like blade. We hold that this blade does not share enough of the characteristics of a stabbing weapon to be a "dirk-knife" within the ambit of G. L. c. 269, § 10 (*b*).

In so holding, we note that this is a close case. It is not our intention to delineate exactly what combination of characteristics defines a dirk-like blade, or state that a five-inch blade can never be enough like a dirk to be proscribed by § 10 (*b*). Other characteristics, as for example, a blade tapering to a sharpened tip, may indicate that the knife in question, though shorter than a normal dirk, was indeed designed for stabbing. Ideally, the Legislature should provide more specific guidelines.

Absent more specific statutory criteria, the defendant's motion for a required finding of not guilty should have been allowed for lack of a showing that the defendant's knife sufficiently fits the recognized definition of a dirk knife.

Deciding as we do, we have no occasion to consider the propriety of the jury instructions.

*Judgment reversed.*

*Verdict set aside.*

*Judgment for the defendant.*