COMMONWEALTH *vs.* ALBERT F. SMITH.

No. 92-P-1728.

Norfolk. February 12, 1996. - July 23, 1996.

Present: ARMSTRONG, KAPLAN, & PERRETTA, JJ.

*Practice, Criminal,* New trial, Assistance of counsel, Continuance, Argu-
ment by prosecutor. *Due Process of Law,* Selective prosecution, Prosecu-
torial vindictiveness. *Selective Prosecution. Dangerous Weapon.*

A criminal defendant did not demonstrate any factual basis for his asser-
tion that he was selectively prosecuted by prison authorities for his
violation of G. L. c. 269, § 10 (*b*), and thus his motion for a new trial,
based on a claim that trial counsel was ineffective for failing to raise the
issue of the prison authorities alleged bias, was correctly denied.
[773-775]
There was no error in a judge's denial of a criminal defendant's motion to
postpone his trial where no prejudice was demonstrated. [775]
No substantial risk of a miscarriage of justice was demonstrated by the
prosecutor's comments in closing argument on the trustworthiness and
value of prison inmate witnesses' testimony. [775-776]
The sharpened double-edged metal blade introduced as evidence at the trial
of an indictment for carrying a knife with a double-edged blade in viola-
tion of G. L. c. 269, § 10 (*b*), was properly admitted with appropriate
instructions and the jury were warranted in finding the defendant guilty
on the basis of proof that he carried that particular knife-like object.
[776-778]

INDICTMENT found and returned in the Superior Court
Department on January 22, 1992.

The case was tried before *John P. Sullivan,* J., and a mo-
tion for a new trial, filed on July 5, 1994, was heard by *Paul
A. Chernoff,* J.

*Louis P. Font* for the defendant.

*Robert C. Cosgrove,* Assistant District Attorney, for the
Commonwealth.

KAPLAN, J. Upon trial by jury in Superior Court, the de-
fendant was convicted of the crime of carrying on his person
a knife with a double-edged blade in violation of G. L. c. 269,

§ 10(*b*).[1] The defendant appeals from an order denying a new trial as well as from the original judgment of conviction.

*Testimony at trial.* The defendant Albert F. Smith was serving a five to seven year sentence for armed assault with intent to rob and on July 18, 1991, was housed at the Massachusetts Correctional Institution at Norfolk (M.C.I., Norfolk). On that day, about 6:05 P.M., the defendant, holding a brown paper bag, was walking in a quadrant between the cell blocks. Inmates were milling about in this area. Correction Officer Ferrell Stroh, observing the defendant with a bag in his hand, followed prison procedure in approaching the defendant and asking what was in the bag. The defendant did not answer, but commenced running with Stroh in pursuit, soon joined by Officer John Murphy. After a chase of nearly a quarter-mile, the defendant threw the bag onto the twelve-foot high roof of an administration building. Thereupon he was apprehended. Another officer, Edward Johansen, arriving at this point, retrieved the bag from the roof. Opened, the bag yielded a knife (or shank, in prison parlance) wrapped in a towel.

On the testimony of the officers mentioned, the Commonwealth rested and the defendant's motion for a required finding of not guilty was denied.

The defendant's defense was that he had no knowledge of what the bag contained. Two inmates, Michael Pearse and Kenneth Poulin, testified that they saw the defendant on his walk and that an inmate (whom they declined to identify) came by and thrust the bag into the defendant's hand. Then followed the encounter with Stroh. The defendant took the stand and testified that the inmate, in passing him the bag, told him to deliver it to another named inmate (the defendant declined to name either the deliverer or intended deliveree). He swore that he did not know what was in the bag; he could not tell the content by merely gripping the bag. He explained his flight by saying that he had on his person marijuana cigarettes, a prison offense, and that he disposed of the cigarettes by casting them on the ground about the time he threw the bag.

The three defense witnesses were severely cross-examined. (The motion for a required finding was not renewed at the close of all the evidence.)

---

[1] The section is quoted in full at note 7 below.

The judge instructed the jury without objection. The jury brought in a verdict of guilty and on April 29, 1992, the defendant was sentenced. The defendant entered an appeal from the judgment.

*Substance of new trial motion.* On July 5, 1994, assisted by new counsel, the defendant filed a motion for a new trial. The gravamen of the motion was ineffective assistance of trial counsel, in that counsel had not pressed claims of "selective prosecution" and "vindictive and retaliatory prosecution." (In fact, the defendant, at the outset of the trial, had been allowed to address the court and mention these claims.)

As a predicate to the claims, the defendant stated in his moving papers that he had earlier brought suit against the Department of Correction for illegal segregation and incarceration when he was an inmate at M.C.I., Cedar Junction, under sentence for an earlier unarmed robbery conviction. The litigation was settled, and the defendant received payment of $28,000 about two weeks before the knife-carrying incident.

Immediately after that incident, and based upon it, the prison authorities brought disciplinary charges against the defendant for possessing the weapon.[2] A disciplinary board (at M.C.I., Cedar Junction) found the defendant guilty and ordered that he forfeit 100 days of good time, that he be confined to segregation for thirty days, and that the case be referred to the district attorney.[3] The case was so referred, the district attorney chose to prosecute, and the c. 269, § 10(*b*), offense of carrying the knife was brought and tried to the verdict of guilty.

The defendant went on to assert that inmates' possession of knives (shanks) was widespread in this and other prisons but such offenses were rarely referred for prosecution in the courts. Thus, according to the defendant, there was ground for believing that illicit bias entered into the administrative decision to refer to the district attorney in his particular case, and his trial counsel had been negligent in failing to bring the

---

[2]The main charge was "[p]ossession, manufacture, introduction of a gun, firearm, explosive, ammunition, weapon, sharpened instrument, knife or tool."

[3]Under G. L. c. 127, § 38C, set out in text below.

bias point forward as ground for dismissing or defeating the prosecution. The defendant claimed in this connection that counsel had mishandled pretrial discovery. He had gone so far as to file a motion to compel the Commonwealth to disclose all disciplinary reports at M.C.I., Norfolk, involving weapons from July 18, 1990, through December 31, 1991, and to indicate which of these cases were referred to the district attorney. The motion was denied. The defendant criticized counsel for not having taken an (interlocutory) appeal from the denial.

The defendant now offered in support of his motion six reports against inmates for possession of weapons in which there was disciplinary punishment but reference was not made to the district attorney — this, despite G. L. c. 127, § 38C (inserted by St. 1960, c. 807), which reads: "Whenever the superintendent of a correctional institution of the commonwealth determines that a felony has been committed therein, he shall forthwith notify the district attorney for the county in which such institution is located."

*New trial properly denied.* On the defendant's claim of ineffectiveness of his trial counsel: Regarding the suggestion about interlocutory appeal of the denial of discovery, it does indeed appear that the motion as written by counsel did not state its purpose with clarity or force; it was unsupported by an account of the litigation with the Department of Correction or any intimation of a resulting animus by prison officials against the defendant. We agree with the Commonwealth and the motion judge that the chances of getting appellate discovery relief would have been slim in any event.[4] But the question whether counsel was at fault in this pretrial discovery matter and if he was at fault, whether in the end that was consequential and prejudicial to the defendant, merges with the larger question presented on the application for a new trial: was there provable illicit bias in the reference of the defendant's case to the district attorney — no prosecutorial bias is charged

---

[4]The motion judge wrote: "This would have been an unusual event and there is no indication that an appellate court would have entertained the appeal on an interlocutory basis and reversed the trial judge." See also the remarks about discovery in selective prosecution cases in *United States* v. *Armstrong*, 116 S. Ct. 1480, 1488-1489 (1996).

against the district attorney himself in deciding to proceed with the case.[5]

Turning to the six cited instances of omissions to refer, the Commonwealth in its brief dissects each of these cases to show that it could not have been successfully prosecuted under G. L. c. 269, § 10(*b*), and hence need not have been referred: for instance, in four of these cases, the weapon was not being "carried," as § 10(*b*) requires, but was rather found in a cell. The Commonwealth, however, shrinks from asserting that there were not in the past cases satisfying § 10(*b*) where the prison officials nevertheless omitted to notify the district attorney.

Let us suppose arguendo that such omissions in fact occurred: the defendant was still short of a basis for a new trial, as the motion judge indicated in his memorandum of decision.

*Selective enforcement.* A party moving to dismiss on this basis[6] must show that "(1) a broader class of persons than those prosecuted has violated the law; (2) the failure to prosecute was either consistent or deliberate; and (3) the decision not to prosecute was based on an impermissible classification such as race, religion, or sex." *Commonwealth* v. *Franklin Fruit Co.*, 388 Mass. 228, 230 (1983). See *Commonwealth* v. *Franklin*, 376 Mass. 885, 894-895 (1978). This ground for relief fails here if only for the reason that no such classification was involved.

*Vindictive or retaliatory prosecution.* The moving papers gave no hint that the defendant could demonstrate actual vindictiveness on the part of individual prison personnel responsible for referring the case. Nor did this appear to be a situation where "the strong likelihood of vindictiveness demonstrated by the facts justified a presumption of improper motivation. *Blackledge* v. *Perry*, [417 U.S. 21,] 28-29 [1974]. The rule is that such a presumption is appropriate only where

---

[5]We indulge an assumption in the particular case that selective or vindictive prosecution can be made out where the final decision to prosecute is made without bias but information about an offense reaches the prosecutor from a biased source. This is surely not a typical case where bias is claimed. See 2 LaFave & Israel, Criminal Procedure § 13.7(b)&(c), at 229-235 (1984 & Supp. 1991).

[6]Such a motion is usually brought ahead of trial. See *Commonwealth* v. *King*, 374 Mass. 5, 22 (1977).

the likelihood of actual vindictiveness is very high and where application of the presumption will not unduly undermine normal prosecutorial discretion." *Commonwealth* v. *Johnson*, 406 Mass. 533, 537 (1990). The fact of the dollar settlement and the postulated fact of past breaches of the statutory duty to notify do not together promise a proper basis for the presumption. A contention of vindictive prosecution can be overcome by evidence of the existence of innocent motivation. See *Commonwealth* v. *Tavares*, 27 Mass. App. Ct. 637, 641-642 (1989); *United States* v. *Andrews*, 633 F.2d 449, 456 (6th Cir. 1980), cert. denied sub nom. *Brooks* v. *United States*, 450 U.S. 927 (1981); 2 LaFave & Israel, Criminal Procedure § 13.7(c), at 233-235 (1984 & Supp. 1991). So here: the defendant's visible chase on prison grounds could have furnished reason for inviting a felony indictment.

In considering the two foregoing claims of bias, we are to recall that it is, after all, no small thing to relieve a person of responsibility for a crime for reasons distinct from and extraneous to the crime. Thus the claims rarely succeed or deserve to succeed.

We conclude that the bias claims were intrinsically too weak to prevail and counsel cannot be held ineffective in respect to them. The appeal from the order denying a new trial must fail.

*Appeal from the conviction.* The defendant reverts to his appeal from his conviction for knife carrying.

*a.* He argues that the judge abused his discretion in denying a motion to postpone trial. Indictment issued on January 22, 1992, and trial was set for March 26. A motion of the defendant's then counsel to withdraw was allowed on March 24. On the same day new counsel was appointed and apparently met with the defendant. At a discovery hearing on April 10, trial was scheduled for April 27. On April 17 counsel received a letter from the defendant about calling five inmates as witnesses and on April 23 counsel filed a motion for a continuance, denied that day. Counsel had evidently discussed the witness question with the defendant at their first meeting on March 24. In fact, five inmate witnesses were available to the defense at the time of trial, of whom the defense used two. Reading the transcript, one does not find that counsel was handicapped in examining them.

*b.* The prosecutor, in his closing argument to the jury,

admonished them not to be "conned by the cons." Inflamed by his own rhetoric, the prosecutor repeated the words three more times. He was entitled to comment on the trustworthiness and value of the inmate witnesses' testimony, but the sloganeering manner should have been avoided. At all events, insofar as the remarks emphasized that the witnesses were convicts, they "told the jury nothing they did not already know." *Commonwealth* v. *Anderson,* 411 Mass. 279, 286-287 (1991) (regarding remarks by the same prosecutor, as we are informed, in another prison case). As the defense did not object, the test to be applied is whether, even assuming error, it created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). It did not.

*c.* The defendant now contends, in effect, that the weapon he carried in the prison quadrant, early entered as exhibit 6 at the trial, could not have been found to be, in the words of the statute, "any knife having a double-edged blade."[7] No such objection was taken at trial, nor was such a contention

---

[7]General Laws c. 269, § 10(*b*), as amended through St. 1986, c. 581, § 1, provides: "Whoever, except as provided by law, carries on his person, or carries on his person or under his control in a vehicle, any stiletto, dagger, or a device or case which enables a knife with a locking blade to be drawn at a locked position, any ballistic knife, or any knife with a detachable blade capable of being propelled by any mechanism, dirk knife, *any knife having a double-edged blade,* or a switch knife, or any knife having an automatic spring release device by which the blade is released from the handle, having a blade of over one and one-half inches, or a slung shot, blowgun, blackjack, metallic knuckles or knuckles of any substance which could be put to the same use with the same or similar effect as metallic knuckles, nunchaku, zoobow, also known as klackers or kung fu sticks, or any similar weapon consisting of two sticks of wood, plastic or metal connected at one end by a length of rope, chain, wire or leather, a shuriken or any similar pointed starlike object intended to injure a person when thrown, or any armband, made with leather which has metallic spikes, points or studs or any similar device made from any other substance or a cestus or similar material weighted with metal or other substance and worn on the hand, or a manrikigusari or similar length of chain having weighted ends; or whoever, when arrested upon a warrant for an alleged crime, or when arrested while committing a breach or disturbance of the public peace, is armed with or has on his person, or has on his person or under his control in a vehicle, a billy or other dangerous weapon other than those herein mentioned and those mentioned in paragraph (a), shall be punished by imprisonment for not less than two and one-half years nor more than five years in the state prison, or for not less than six months nor more than two and one-half years in a jail or house of correction, except that, if the court

made on the motion for a new trial; the point is first raised in the defendant's brief on this appeal.

We answer the point, pretermitting the question whether at this stage the defendant may resurrect his motion for a required finding of not guilty, as he suggests.

From the first introductory remarks of the judge, the triers were made aware of the simple accusation against the defendant according to the terms of the statute. The definition, or referential paraphrases of it, reappeared through the trial. In the final instructions, the judge asked the jury to apply the facts (which included their observations of the exhibits) to the statutory definition of the crime, which he repeated. The words of the statute were commonplace and did not require redefinition. The jury are assumed to have made the application and to have found the definition satisfied. As mentioned, no one questioned through the trial and new-trial motion that such a finding was supported. We may postulate the reasoning that would support the finding. At sight, the weapon was a metal piece, $10\,5/8$ inches long. For $7\,3/4$ inches of its length it was $5/8$ of an inch across and $1/8$ of an inch in thickness. Then the metal sharpened to a point with either side thinned to an edge. The weapon was obviously "homemade," showing some corrugations along its length. First, the weapon was such as to have as its primary purpose the infliction of physical harm on an adversary. See *Commonwealth* v. *Miller*, 22 Mass. App. Ct. 694, 696 (1986) (commenting on the statute). See also *Commonwealth* v. *Thompson*, 15 Mass. App. Ct. 974 (1983), citing *Commonwealth* v. *Tarrant*, 367 Mass. 411, 415-417 (1975), *Commonwealth* v. *Appleby*, 380 Mass. 296, 304 (1980), and *Commonwealth* v. *Blavackas*, 11 Mass. App. Ct. 746, 748, 752-753 (1981). Second, the weapon was a knife (or knifelike). "Any knife" implied a generic usage, so that it did not matter that the metal piece had no clearly marked handle (equally true, e.g., of tableware still called knives).[8] See *Boles* v. *State*, 416 S.W.2d 431, 432-433 (Tex. Crim. App. 1967); *Vaughn* v. *State*, 500 S.W.2d 510, 511-512 (Tex. Crim. App.

---

finds that the defendant has not been previously convicted of a felony, he may be punished by a fine of not more than fifty dollars or by imprisonment for not more than two and one-half years in a jail or house of correction" (emphasis supplied).

[8]The weapon could be wielded by the hand, and for convenience might be bound in tape at that end.

1973) (both illustrating generic use of "knife"). See also *May* v. *State*, 110 Ark. 432, 435 (1913); *Harper* v. *State*, 110 S.W.2d 67, 67 (Tex. Crim. App. 1937); *Terrell* v. *State*, 400 S.W. 2d 566, 567 (Tex. Crim. App. 1966). Third, the sharpened end was a double-edged blade, so here was a knife "having" such a blade. It was not essential that the weapon be double-edged along its entire length. Compare *Rainer* v. *State*, 763 S.W. 2d 615, 616 (Tex. Ct. App. 1989); *United States* v. *Deisher*, 32 M.J. 579, 580 (A.F.C.M.R. 1990) (definitions requiring blade to be a certain length in inches satisfied by a blade from handle to point of that length, of which only a lesser length was edged). Cf. *People* v. *Pickett*, 194 Colo. 178, 182 (1977). But cf. *Bradvica* v. *State*, 104 Nev. 475, 478 (1988).

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*