COMMONWEALTH *vs.* AMI H. PERRY. November 18, 2009. *Dangerous Weapon. Practice, Criminal,* Required finding. *Words,* "Blackjack."

After investigating a report of an assault, police detectives effectuated a warrantless arrest of the defendant, Ami H. Perry. He subsequently was charged with assault and battery by means of a dangerous weapon (a pencil), in violation of G. L. c. 265, § 15A (*a*), and violation of a licensing statute, G. L. c. 90, § 24B. The police had seized an "expandable baton" from him after arrest, and on that basis, he also was charged with carrying a dangerous weapon in violation of G. L. c. 269, § 10 (*b*), "to wit: a BLACKJACK."[1] Following a jury-waived trial, a judge of the District Court entered a required finding of not guilty as to the first two charges. The defendant was convicted of the third charge. The Appeals Court affirmed the conviction, *Commonwealth* v. *Perry*, 73 Mass. App. Ct. 1122 (2009), and this court allowed the defendant's application for further review. We reverse.

*Discussion.* The defendant was carrying an "expandable baton"[2] when he

---

[1]General Laws c. 269, § 10 (*b*), provides:

"(b) [1] Whoever . . . carries on his person . . . any stiletto, dagger or a device or case which enables a knife with a locking blade to be drawn at a locked position, any ballistic knife, or any knife with a detachable blade capable of being propelled by any mechanism, dirk knife, any knife having a double-edged blade, or a switch knife, or any knife having an automatic spring release device by which the blade is released from the handle, having a blade of over one and one-half inches, or a slung shot, blowgun, blackjack, metallic knuckles or knuckles of any substance which could be put to the same use with the same or similar effect as metallic knuckles, nunchaku, zoobow, also known as klackers or kung fu sticks, or any similar weapon consisting of two sticks of wood, plastic or metal connected at one end by a length of rope, chain, wire or leather, a shuriken or any similar pointed starlike object intended to injure a person when thrown, or any armband, made with leather which has metallic spikes, points or studs or any similar device made from any other substance or a cestus or similar material weighted with metal or other substance and worn on the hand, or a manrikigusari or similar length of chain having weighted ends; or [2] whoever, when arrested upon a warrant for an alleged crime, or when arrested while committing a breach or disturbance of the public peace, is armed with or has on his person, or has on his person or under his control in a vehicle, a billy or other dangerous weapon other than those herein mentioned and those mentioned in paragraph (a), shall be punished by imprisonment . . . ."

For clarity in this opinion, we refer to § 10 (*b*) [1] as the first portion of the statute, and § 10 (*b*) [2] as the second portion, although the statute does not contain those designations.

[2]According to the detective's testimony, the expandable baton was "metal, approximately eight to ten inches long, and if you — you can expand it by — . . . flicking your wrist and having the tipped end of it come out of the handle."

was taken into custody and booked. Although an expandable baton is not among the weapons specifically listed in the first portion of G. L. c. 269, § 10 (*b*),[3] see note 1, *supra*, the Commonwealth charged the defendant with carrying "a dangerous weapon, to wit: a BLACKJACK, not being authorized by law to do so, in violation of G. L. c. 269, § 10 (*b*)." Over the defendant's objection at trial, a police detective compared the expandable baton to a blackjack, but conceded on both direct and cross-examination that the expandable baton at issue was not truly a blackjack. The detective stated: "[I]t's *not* my testimony that this is a blackjack, it's my testimony that it is similar in the way that it's constructed" (emphasis added).

The question is whether the evidence warranted a finding that the expandable baton was a blackjack within the meaning of the first portion of G. L. c. 269, § 10 (*b*). In construing the statute, we begin with the observation that "[a] general tenet of statutory construction is that the 'statutory expression of one thing is an implied exclusion of other things omitted from the statute.' " *Commonwealth* v. *Ronald R.*, 450 Mass. 262, 266 (2007), quoting *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975).

The statute identifies a number of specific weapons that are prohibited. In some instances, the name of the weapon is followed by language describing weapons similar to the identified weapon. Thus, for example, the statute identifies several specific types of knives, but then also refers to "any [other] knife" having certain characteristics. Similarly, the statute refers to "knuckles of any substance" that can be "put to the same use with the same or similar effect" as metallic knuckles; nunchaku, zoobow, "or any similar weapon" configured with two sticks connected by rope, chain, or wire; and shuriken or "any similar pointed starlike object intended to injure a person when thrown." G. L. c. 269, § 10 (*b*).

Other weapons, however, such as a "blackjack," are particularly named in the statute, without any accompanying reference to "similar weapons," or those that can be put to the "same or similar" use or effect. While the second portion of § 10 (*b*) contains very broad, catch-all language ("or other dangerous weapon[s]"), the first portion of the subsection — the only part applicable to this defendant, see note 3, *infra* — does not. The first portion purports to proscribe only carrying certain dangerous weapons, but not others.[4] See *Commonwealth* v. *Smith*, 40 Mass. App. Ct. 770, 770-771, 777 (1996) (homemade weapon satisfied definition of a "knife," particularly in that Legislature used the general term "any knife"); *Commonwealth* v. *Miller*, 22 Mass. App. Ct. 694, 694 n.1 (1986) ("clear that the Legislature did not intend to encompass all knives in its enumeration of 'per se' dangerous weapons"); *Commonwealth* v. *Blavackas*, 11 Mass. App. Ct. 746, 752-753 (1981) (small kitchen bread knife with approximately eight-inch blade not type of knife specified in first portion of G. L. c. 269, § 10 [*b*]). In this case, the omission of language broadly including weapons similar to blackjacks in purpose or effect, when

---

[3]There is no dispute that the second provision of the statute does not apply. That provision applies only when a defendant is arrested on a warrant, or is arrested "while committing a breach or disturbance of the public peace." G. L. c. 269, § 10 (*b*).

[4]The Legislature has amended G. L. c. 269, § 10 (*b*), to include additional weapons a number of times. For example, the statute was amended in 1982 to include armbands, in 1985 to include blowguns, and in 1986 to include ballistics knives. See St. 1982, c. 254; St. 1985, c. 349; St. 1986, c. 581, § 1. The term "blackjack" has never been amended or modified since it was inserted. See St. 1957, c. 688, § 23.

read in light of the inclusion of such language in both the first and second part of the statute with regard to other types of weapons, indicates the Legislature intended specifically to proscribe "blackjack[s]" but not all weapons similar to blackjacks. The Commonwealth's contention that the defendant's expandable baton is the "functional equivalent of a blackjack" is therefore unavailing.

The evidence in this case is not sufficient to establish that the "expandable baton" carried by the defendant was a "blackjack" carried in violation of G. L. c. 269, § 10 (*b*). While the term "blackjack" is not defined in G. L. c. 269, § 10 (*b*), the Commonwealth's witness testified that the weapon seized from the defendant was not a blackjack.

*Judgment reversed.*

*Thomas J. Chirokas* for the defendant.

*Michael J. Markoff*, Special Assistant District Attorney, for the Commonwealth.