Commonwealth *vs.* Jerome Higgins.

No. 13-P-924.

Suffolk. March 26, 2014. - June 25, 2014.

Present: Milkey, Brown, & Maldonado, JJ.

*Dangerous Weapon. Evidence,* Knife.

At a criminal trial, evidence that a knife owned by the defendant was equipped with a device that enabled its blade to be drawn at a locked position was insufficient to support the defendant's conviction of carrying a dangerous weapon under G. L. c. 269, § 10(*b*), where the jury heard no testimony whatsoever about the ease with which thumb studs on the knife's blade allowed it to be opened into a locked position; where, given that the closed knife was sealed during trial in a thick plastic evidence bag, it would not have been possible for the jury to make their own assessment of this issue; and where, in the absence of testimony, argument, or instruction regarding this issue, there was no apparent reason for the jury to attempt their own assessment. [535-538]

Indictment found and returned in the Superior Court Department on October 27, 2009.

The case was tried before *Thomas E. Connolly,* J.

*Jon R. Maddox* for the defendant.

*Zachary Hillman,* Assistant District Attorney, for the Commonwealth.

Milkey, J. Following a jury trial in Superior Court, the defendant was convicted of violating G. L. c. 269, § 10(*b*), by carrying a dangerous weapon (a knife).[1] Because we agree with the

---

[1]Section 10(*b*), as amended through St. 1986, c. 581, § 1, provides in relevant part:

"Whoever . . . carries on his person . . . any stiletto, dagger or a device or case which enables a knife with a locking blade to be drawn at a locked position, any ballistic knife, or any knife with a detachable blade capable of being propelled by any mechanism, dirk knife, any knife having a double-edged blade, or a switch knife, or any knife having an automatic spring release device by which the blade is released

defendant that the evidence was insufficient to prove that his knife was of the type prohibited by the statute, we reverse the judgment and set aside the verdict.

*Background.* On September 5, 2009, Boston police officers, who were investigating a stabbing that had occurred earlier that day, arrested the defendant at his residence. After the arrest, the defendant acknowledged that he owned a knife, while denying that he had used the knife in any stabbing. The police "froze[]" the scene, obtained a search warrant, and retrieved the knife from the defendant's bedroom. The knife, which was admitted in evidence, is a folding knife that has a blade that locks into place. Further characteristics of the knife are reserved for later discussion.

For the stabbing, the defendant was charged with aggravated assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(*c*). That charge was the centerpiece of the trial. Thus, for example, both closing arguments focused exclusively on whether it was the defendant who had stabbed the victim. The defendant was also charged with violating G. L. c. 269, § 10(*b*), for carrying the knife on his person. The jury acquitted the defendant of the aggravated assault and battery charge, but convicted him of carrying a dangerous weapon.

*Discussion.* Section 10(*b*) of G. L. c. 269 makes it illegal for anyone to carry certain kinds of knives.[2] See *Commonwealth* v. *Miller,* 22 Mass. App. Ct. 694 (1986); *Commonwealth* v. *Garcia,* 82 Mass. App. Ct. 239, 242-249 (2012). The question before us is whether there was sufficient evidence that the defendant's knife fell within one of the designated categories outlawed by the statute. In determining the sufficiency of the evidence, we must of course consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979) (citation omitted).

---

from the handle, having a blade of over one and one-half inches . . . shall be punished by imprisonment."

[2]The prohibition does not apply where permission to carry such a knife is "provided by law." G. L. c. 269, § 10(*b*), as appearing in St. 1974, c. 649, § 2. It is undisputed that no such exception applies here.

The Commonwealth makes no claim that the defendant's knife is a "stiletto," "dirk knife," or one of the other types of knives specifically referenced in the statute. Rather, the Commonwealth relies on catch-all statutory language that applies to "a device or case which enables a knife with a locking blade to be drawn at a locked position."[3] G. L. c. 269, § 10(*b*). Thus, under the plain language of the relevant portion of the statute, a knife is not prohibited merely because it has a blade that locks into place. Cf. *Commonwealth* v. *Wynton W.*, 459 Mass. 745, 755 n.5 (2011) (presence of "a locking mechanism . . . or any other individual feature[] is not dispositive of the question whether a knife is dangerous per se under the common law"). Instead, the Commonwealth would have to prove in addition that there was a "device or case" that allowed the blade to be drawn at a locked position. G. L. c. 269, § 10(*b*).[4]

The Commonwealth has never contended that the defendant's knife has a spring or other mechanism that — when activated — automatically sets the blade into a locked position. However, for the first time on appeal, it points out that there are "thumb studs" that protrude from either side of the knife's blade. According to the Commonwealth, those protrusions allow someone holding the knife in one hand to open the blade quickly into a locked position with a mere flick of his thumb. The Commonwealth maintains that, by serving that end, the thumb studs are prohibited "device[s] that enable[] the blade to be drawn at a locked position." The Commonwealth further argues that knives equipped with thumb studs can be drawn into fighting mode as quickly as other "quick release" knives expressly

---

[3]The jury instructions were based almost verbatim on this statutory language.

[4]The defendant moved for a required finding of not guilty at the close of the Commonwealth's case, albeit on the ground that there was insufficient evidence that the defendant had carried the knife outside his home (a ground he has now abandoned). After the judge denied that motion and the jury rendered their verdict, the defendant asked the judge to vacate the verdict, arguing for the first time that the Commonwealth had produced insufficient evidence that the knife was subject to the statute. In denying the posttrial motion, the judge ruled that the knife's locking device was considered part of the handle, and that the handle itself was the "device or case" referred to in the statute. The Commonwealth makes no effort to defend this appeal on the grounds identified by the judge, and implicitly concedes that the mere presence of a locking mechanism is not enough to make the knife prohibited under the statute.

prohibited by the statute (e.g., "stiletto" and "switch knife"), and that banning them furthers the recognized statutory purpose of prohibiting knives "primarily designed for stabbing human beings or for other unlawful objectives." *Commonwealth* v. *Miller*, 22 Mass. App. Ct. at 696.[5]

The defendant counters that his knife is an ordinary hunting and camping knife of the sort available for purchase throughout the Commonwealth.[6] The import of that argument is that even if the knife can be opened with the ease the Commonwealth asserts, it was designed to serve many utilitarian purposes, and was not "primarily designed" for stabbing people. *Ibid.* Compare *Commonwealth* v. *Garcia*, 82 Mass. App. Ct. at 248-249 (concluding that a knife was prohibited under the statute in part because it had no apparent "alternative innocuous usage"). The defendant also argues that the Commonwealth's theory of the case cannot be correct, because it would make such ubiquitous knives per se illegal, thereby rendering thousands of Commonwealth knife owners unwitting criminals.

In the current appeal, we need not resolve whether "thumb studs" on the blade of a folding knife could be "device[s]" outlawed by G. L. c. 269, § 10(*b*). That is because even if the Commonwealth's interpretation of the statute is correct, there still would be insufficient trial evidence in the case before us. Although the Commonwealth presented evidence that the knife had a locking mechanism, the jury heard no testimony whatsoever about the ease with which the thumb studs allowed the blade to be opened into a locked position. To fill the gap, the Com-

---

[5]In *Commonwealth* v. *Miller*, we concluded that the knife at issue in that case was not covered by the statute in part because "[i]n contrast to other quick release knives enumerated by the statute, [the knife] does not open quickly or easily." *Id.* at 696. The specific statutory language on which the Commonwealth relies in the current case was added in the immediate wake of *Miller*. See St. 1986, c. 581, § 1. The Commonwealth argues that the amendment was designed to ensure that a broad array of "quick draw" knives was outlawed.

[6]According to a statement that the defendant made to police, he bought the knife in a downtown Boston store that sells "Kung Fu videos." There was no other trial evidence regarding the availability of such knives. In his posttrial motion, see note 4, *supra*, the defendant appended a number of documents purporting to show that such knives are broadly sold as hunting or camping knives.

monwealth now maintains that the jurors themselves could have reached a conclusion regarding such issues based on their own examination of the knife. To demonstrate what the jury saw, the Commonwealth requested that the actual knife be transported to us as part of the appellate record. We allowed the Commonwealth's motion, but this does not aid its case. As presented to the jury, the knife — in a closed position — was sealed in an evidence bag made of thick plastic suitable for containing "sharps." With the knife packaged in that manner, it simply would not have been possible for the jury to assess the ease with which the thumb studs allowed the knife to be opened, with its blade drawn into a locked position. In addition, in the absence of testimony, argument, or instruction regarding the ease with which the blade could be drawn, there was no apparent reason for the jury to attempt their own assessment of such issues.[7]

In sum, because the evidence was not sufficient to establish that the knife was equipped with a "device" that enabled its blade "to be drawn at a locked position," the defendant's conviction cannot stand.[8] G. L. c. 269, § 10(*b*).

*Judgment reversed.*

*Verdict set aside.*

*Judgment for the defendant.*

---

[7]We need not address the propriety of the jury's testing the knife in the manner the Commonwealth suggests.

[8]We need not reach the defendant's other claims of error.