GANTS, C.J.
**325 *536 Before July 12, 2018, "a child between seven and [eighteen] who violates any city ordinance or town by-law or who **326 commits any offence against a law of the commonwealth" could be adjudicated a "delinquent child" in the Juvenile Court. See G. L. c. 119, § 52, as amended through St. 2013, c. 84, § 7; G. L. c. 119, § 58. On and after that date, as a result of the enactment of St. 2018, c. 69, entitled "An Act relative to criminal justice reform" (act), a child who commits an offense before the age of twelve or who commits a civil infraction, violates a municipal ordinance or town bylaw, or commits a first offense of a misdemeanor "for which the punishment is a fine, imprisonment in a jail or house of correction for not more than [six] months or both such fine and imprisonment" can no longer be adjudicated a "delinquent child." St. 2018, c. 69, § 72.[1] The cases before us concern two juveniles who allegedly committed offenses before July 12, 2018, but whose cases remained pending before the Juvenile Court on and after that date. There is no dispute that, if their cases had been adjudicated before July 12, each could have been subject to adjudication as a "delinquent child." There is also no dispute that, if they had committed the same offenses on or after July 12, neither juvenile could be adjudicated a "delinquent child" under the amended definition of that term because of age (in the case of Lazlo L.[2] ) or because of the nature of the offenses (in the case of Miles M.[3] ).
The issue presented on appeal is whether the amended definition of "delinquent child" should be applied retroactively to cases pending on July 12, 2018. We conclude that it should, and that a child may not be adjudicated a "delinquent child" on and after this date if he or she does not fit within the definition of that term as amended by the act. We therefore vacate the orders denying the juveniles' motions to dismiss, and remand both matters to the Juvenile Court, where an order of dismissal for each case shall issue.[4]
*537 Background. 1. Lazlo. At the time of the events at issue, Lazlo was eleven years old and living with his mother and stepfather.
**327 The complainant, A.M.,[5] is the juvenile's stepsister. She lived primarily with her mother, but would occasionally spend the night at her father's (Lazlo's stepfather's) home. A.M. alleges that on one such night in 2017, when she was thirteen, Lazlo entered her bedroom uninvited and performed unwanted sexual acts upon her.
On April 10, 2018, a complaint issued charging Lazlo with one count of rape and abuse of a child in violation of G. L. c. 265, § 23. On June 13, Lazlo filed a motion to dismiss the complaint prior to arraignment, arguing that the act's amended definition of "delinquent child" should apply retroactively to his case, and that the Juvenile Court lacked jurisdiction to adjudicate him a "delinquent child" because he was eleven years old at the time of the alleged offense. The Commonwealth opposed the motion to dismiss, and the motion judge denied it.[6] Lazlo's case was pending when the amended definition of "delinquent child" became effective, and remains so.
2. Miles. On June 13, 2018, police filed an application for a complaint against Miles for trespassing in violation of G. L. c. 266, § 120, and disorderly conduct in violation of G. L. c. 272, § 53 (b ). The following day, a Juvenile Court clerk found that both charges were supported by probable cause. A delinquency complaint issued against Miles on June 15. When he appeared for arraignment on July 9, Miles moved to dismiss the charges against him prior to arraignment, arguing that because he had no prior criminal or delinquency record, neither charged offense was a qualifying offense under the amended definition of "delinquent child."[7]
The Juvenile Court judge denied Miles's motion to dismiss, as well as his request to postpone the arraignment. The judge asserted that the act did not apply to the juvenile's case because he was not charged with a school-based offense or a civil infraction. The judge further reasoned that arraignment was proper because **328 "[t]here are no fines that are affixed under the juvenile law" and because the Department of Youth Services (department) "is not a place of incarceration," but one of rehabilitation. The Juvenile Court judge proceeded to arraign Miles, and his case was pending when the amended definition of "delinquent child" became effective (and remains pending).
3. Petitions pursuant to G. L. c. 211, § 3. Both juveniles filed interlocutory petitions for extraordinary relief pursuant to G. L. c. 211, § 3, requesting that a single justice of the county court exercise this court's general superintendence power to reverse the decisions of the Juvenile Court judges in their respective cases. A single justice of the county court reserved and reported both cases for determination by the full court.
*538 Discussion. Because this case turns on a question of statutory interpretation, we review the juveniles' motions to dismiss de novo. Commonwealth v. Martin, 476 Mass. 72, 75, 63 N.E.3d 1107 (2016). The parties agree that neither juvenile could qualify as a "delinquent child" under the term's amended definition.[8] The only question, then, is whether this definition should be applied retroactively to cases, such as these, that were pending at the time that definition became effective.
1. Statutory presumption of prospective application. To determine whether the amended definition of "delinquent child" applies retroactively, we first must determine whether the rule of statutory construction described in G. L. c. 4, § 6, Second, is **329 applicable here. General Laws c. 4, § 6, Second, provides in relevant part:
"In construing statutes the following rules shall be observed, unless their observance would involve a construction inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute: ... Second, The repeal of a statute shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, prosecution or proceeding pending at the time of the repeal for an offence committed ... under the statute repealed" (emphasis added).
Because this particular rule of construction applies only to "strictly penal" statutes, Commonwealth v. Dotson, 462 Mass. 96, 99, 966 N.E.2d 811 (2012), quoting Nassar v. Commonwealth, 341 Mass. 584, 588, 171 N.E.2d 157 (1961), we must decide whether the repeal accomplished through the amended definition of "delinquent child" in St. 2018, c. 69, § 72, affects a penal statute.[9] If it does, the new "delinquent child" definition is presumptively prospective in its application, that is, it would apply only to cases adjudicating offenses that were committed on or after July 12, 2018. See Commonwealth v. Bruno, 432 Mass. 489, 497-498, 735 N.E.2d 1222 (2000) ("When the conduct triggering the statute's application *539 occurs on or after its effective date, the statute's application is deemed prospective ...").
The juveniles argue that G. L. c. 4, § 6, is not applicable here because the Juvenile Court is not a penal institution and the department's purpose is rehabilitation, not punishment. They contend that a statute articulating the jurisdiction of a nonpenal institution cannot qualify as a "strictly penal" statute subject to the rule of construction outlined in G. L. c. 4, § 6, Second.[10] The juveniles are correct that that our statutes governing the adjudication **330 of children "shall be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance." G. L. c. 119, § 53. In accord with that statutory principle, we have recognized that the "rehabilitation of the child remains front and center" in the Juvenile Court, Commonwealth v. Mogelinski, 466 Mass. 627, 654, 1 N.E.3d 237 (2013), and that delinquency is "legally and constitutionally different from crime." Commonwealth v. Freeman, 472 Mass. 503, 506, 36 N.E.3d 12 (2015), quoting Metcalf v. Commonwealth, 338 Mass. 648, 651-652, 156 N.E.2d 649 (1959). See G. L. c. 119, § 53 ("Proceedings against children ... shall not be deemed criminal proceedings").
A statute, however, need not be criminal to be penal. Any "statute designed to enforce the law by punishing offenders, rather than simply by enforcing restitution to those damaged, is in the nature of a penal statute." Johnson's Case, 69 Mass. App. Ct. 834, 838, 872 N.E.2d 1131 (2007), quoting Collatos v. Boston Retirement Bd., 396 Mass. 684, 686, 488 N.E.2d 401 (1986). A child adjudicated delinquent in a Juvenile Court may suffer a loss of liberty, including commitment to the department. See G. L. c. 119, § 58.[11] Even if the purpose of commitment is "primarily rehabilitative," Commonwealth v. Magnus M., 461 Mass. 459, 461, 961 N.E.2d 581 (2012), a deprivation of liberty imposed by the State as a direct consequence of being found delinquent for having committed an offense necessarily includes an element of punishment. See 3 N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 59:1 (7th ed. 2008) (statute "dealing with juveniles [is] not technically classified as criminal, but because it potentially involves the deprivation of liberty similar to those which are criminal in nature, it is construed no less strictly than statutes imposing criminal sanctions on adults"). Where a statute affects whether a child can be adjudicated delinquent, and therefore whether that child may be subject to a loss of liberty, an amendment to that statute necessarily implicates the potential *540 for punishment. See **331 Watts v. Commonwealth, 468 Mass. 49, 53-54, 8 N.E.3d 717 (2014) (statute considered penal, not merely procedural, where it "changes both the nature of the proceedings against, and dispositional options for" juveniles of certain age [footnote omitted] ). We therefore conclude that § 72 qualifies as penal for the purposes of G. L. c. 4, § 6, Second, and that its application is presumptively prospective.[12]
2. Exceptions to presumption of prospectivity. As the preamble to G. L. c. 4, § 6, makes clear, the "presumption of prospective application ... is not absolute," and is subject to two exceptions explicitly provided for in the preamble. Commonwealth v. Bradley, 466 Mass. 551, 553, 998 N.E.2d 774 (2013). Namely, the rules of statutory construction do not apply where "their observance would involve a construction inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute." G. L. c. 4, § 6. We consider each exception in turn.
a. Legislature's manifest intent. "The presumption of prospective application is inconsistent with the manifest intent of the law-making body where there is a clearly expressed intention of the Legislature that the new statute apply retroactively" (quotations and citation omitted). Bradley, 466 Mass. at 554, 998 N.E.2d 774. In order to determine the Legislature's intent, "we look to all the statutory words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished to the end that the purpose of its framers may be effectuated" (quotation, citation, and alteration omitted). Id. Because the Legislature's intent to apply a statute retroactively must be "clearly expressed," we cannot overcome the presumption of prospective application under this first exception simply by "inferring that the Legislature probably intended retroactive application." Id., quoting Dotson, 462 Mass. at 101, 966 N.E.2d 811. But the presumption may be overcome where the Legislature "clearly express[es] its intent through the words used in a statute or the inclusion of other retroactive provisions in the statute that would make prospective application of the provision at issue 'anomalous, if not absurd.' " Bradley, supra, quoting Commonwealth v. Galvin, 466 Mass. 286, 291, 995 N.E.2d 27 (2013).
We conclude that there is inadequate evidence of the Legislature's manifest intent to apply § 72 retroactively to overcome the **332 presumption of prospective application. Although the Legislature clearly established the effective date of § 72, see St. 2018, c. 69, § 232, it did not clearly establish whether the definition of "delinquent child," once it became effective, would apply retroactively to pending cases. See Bradley, 466 Mass. at 555, 998 N.E.2d 774 (effective date does not determine whether Legislature intended retroactive application). Nor are there any other provisions in the act that would make prospective application of § 72 "anomalous, if not absurd." Id. at 554, 998 N.E.2d 774, quoting Galvin, 466 Mass. at 291, 995 N.E.2d 27. In the absence of clear indication that the Legislature intended retroactive application, the manifest intent exception is not satisfied. *541 The juveniles' arguments to the contrary are unavailing. The juveniles assert that by expressly providing that certain sections of the act, not including § 72, shall be applied prospectively, the Legislature indicated its manifest intent that the amended definition of "delinquent child" be applied retroactively. See St. 2018, c. 69, § 237 ("Sections 45, 46, 49, 50, 51, 57 and 111 shall apply to offenses committed after the effective date of this act"). The principle of statutory interpretation that the "statutory expression of one thing is an implied exclusion of other things omitted from the statute" (citation omitted), Commonwealth v. Perry, 455 Mass. 1010, 1011, 916 N.E.2d 762 (2009), does not help the juveniles in these cases for two reasons. First, implied exclusion is insufficient to demonstrate manifest intent. See Bradley, 466 Mass. at 554, 998 N.E.2d 774. Second, this principle of statutory construction is not a rule of law, but rather a mere aid to interpretation, Phillips v. Equity Residential Mgt., LLC, 478 Mass. 251, 259 n.19, 85 N.E.3d 12 (2017), and should be applied only with great caution, Trustees of Cambridge Point Condominium Trust v. Cambridge Point, LLC, 478 Mass. 697, 702, 88 N.E.3d 1142 (2018). Reliance on this principle is therefore inadequate to satisfy the first exception, which requires a clear expression of legislative intent to overcome the presumption of prospectivity.
b. Repugnancy. Even where prospective application is not inconsistent with the manifest intent of the Legislature, retroactive application is appropriate if prospective application would be "repugnant to the context" of the statutory amendment narrowing the Juvenile Court's jurisdiction. G. L. c. 4, § 6. The "presumption of prospective application is 'repugnant to the context of the ... statute' where it would be contrary to the purpose of the statute to delay the accomplishment of that purpose." Bradley, 466 Mass. at 555-556, 998 N.E.2d 774. Unlike the manifest intent exception, the **333 repugnancy exception "certainly does not require that the intent of the Legislature be made 'manifest.' " Id. at 556, 998 N.E.2d 774. It does, however, "compel us to discern the legislative purpose of the statute at issue and determine whether prospective application would be inconsistent with that purpose." Id.
The legislative history of the act indicates that the Legislature understood that children who enter the juvenile justice system have a higher risk of reoffending for the remainder of their lives, and that their risk of recidivism is greater the earlier they enter the system. See State House News Service (House Sess.), Nov. 13, 2017 (statement of Rep. Claire D. Cronin, co-chair, Joint Committee on Judiciary) ("the earlier a child become[s] involved" in justice system, "the more likely that child will remain in the system through his or her life"); State House News Service (House Sess.), Apr. 4, 2018 (statement of Rep. Kay Khan, co-chair, Joint Committee on Children, Families and Persons with Disabilities) (amendment that "raises juvenile jurisdiction from [seven] to [twelve]," among other amendments, "will give young people a second chance"); State House News Service (Senate Sess.), Oct. 26, 2017 (statement of Sen. William N. Brownsberger, co-chair, Joint Committee on Judiciary) ("decriminalizing childhood behaviors" part of effort to "cut the chains that hold people down when they're trying to get back up on their feet").[13]
*542 It is clear from the text of § 72 that the Legislature intended to reduce the number of children who enter the juvenile justice system by narrowing the definition of "delinquent child" to exclude children below the age of twelve and children who commit civil infractions, violate a municipal ordinance or town bylaw, or commit a first offense of a minor misdemeanor. In so doing, the Legislature implicitly declared that the juvenile justice system is not the appropriate forum to address offenses committed by children under twelve, or civil infractions, or first offenses **334 of a minor misdemeanor committed by any child, and that such matters should not result in a juvenile record that may later adversely affect a child and increase his or her risk to recidivate. We see no reason to delay the application of an amendment aimed at combatting the negative effects of Juvenile Court involvement on children and their communities. See Bradley, 466 Mass. at 559, 998 N.E.2d 774 (retroactive application appropriate where prospective application affects not only "the individuals charged" but also their broader communities). Allowing these juveniles to proceed through the Juvenile Court system and potentially to be adjudicated as delinquent children would be directly contrary to the Legislature's goal of giving children in their position a second chance by removing the possibility of a Juvenile Court adjudication, with all of its attendant consequences.
The juveniles' cases are distinguishable from Watts, 468 Mass. at 49-50, 8 N.E.3d 717, where we held that St. 2013, c. 84, which expanded the Juvenile Court's jurisdiction to include persons who were seventeen years old at the time of an alleged offense, did not apply retroactively to criminal cases pending on the act's effective date. Prior to the enactment of this act, seventeen year old offenders were treated as adult criminals subject to the jurisdiction of the Superior and District Courts. Id. at 51. In Watts, supra at 57, 8 N.E.3d 717, we acknowledged that expanding the jurisdiction of the Juvenile Court aimed "to protect minors, particularly children who are seventeen years of age, from certain well-documented harms, including ... an increased risk of recidivism, that arise when children are prosecuted as if they were adults," and that this goal was "significant and compelling." Nevertheless, the court concluded that prospective application would not be repugnant to the context of the act because the Legislature was aware that expanding the jurisdiction of the Juvenile Court to include seventeen year old offenders would require "additional staff and services" and result in "unavoidable complexities," which would inevitably require time to resolve. Id. at 60, 62, 8 N.E.3d 717. "It is no help to these children," the court reasoned, "if they are transferred to the Juvenile Court system before the system is able to absorb them and able to provide the attending services that they need." Id. at 57, 8 N.E.3d 717.
Such concerns do not exist here. It takes no additional resources for the Juvenile Court to dismiss cases that were pending on July 12, 2018, where the juvenile no longer falls under the definition of "delinquent *543 child." On the contrary, narrowing the **335 jurisdiction of the Juvenile Court to exclude certain children will reduce the number of cases before the Juvenile Court, conserving its resources as opposed to stretching them. Therefore, unlike in Watts, 468 Mass. at 57, 8 N.E.3d 717, there is no practical reason to delay the Legislature's "significant and compelling" goal of protecting children under the age of twelve, and children who commit civil infractions or a first offense of a minor misdemeanor, from the long-lasting effects of involvement in the juvenile justice system.
The jurisdictional nature of § 72 reinforces our conclusion that retroactive application is appropriate here. As of July 12, 2018, the Juvenile Court no longer has jurisdiction to adjudicate as a "delinquent child" either of the children who are involved in these cases. See G. L. c. 119, § 52, as amended through St. 2018, c. 69, § 72; G. L. c. 119, § 58. Because jurisdiction is a threshold requirement for a court to decide any case, it would have been logical for the Legislature to expect that Juvenile Court proceedings against children who were removed from the definition of "delinquent child" would cease and the cases would be dismissed on the day that § 72 became effective. See Mogelinski, 466 Mass. at 645, 1 N.E.3d 237 ("Juvenile Court is a court of limited jurisdiction, which has no authority in the absence of a specific statutory authorization" [quotation, citation, and alteration omitted] ).
Because we conclude that prospective application of St. 2018, c. 69, § 72, would be repugnant to its context, we hold that the amended definition of "delinquent child" applies retroactively to cases pending on its effective date of July 12, 2018. Therefore, the juveniles in these cases are not subject to the Juvenile Court's jurisdiction.[14]
Conclusion. We vacate the decisions denying both juveniles' motions to dismiss and remand the matters to the Juvenile Court for dismissal.[15]
So ordered.

The Legislature also raised from seven to twelve the minimum age at which a complaint could issue against a child. See St. 2018, c. 69, § 73, amending G. L. c. 119, § 54.

A pseudonym.

A pseudonym.

We acknowledge the amicus briefs submitted by the youth advocacy division of the Committee for Public Counsel Services and the Massachusetts Association of Criminal Defense Lawyers, and by the district attorney for the Bristol district.

A pseudonym.

Lazlo L. has yet to be arraigned, because a Juvenile Court judge allowed his motion to stay the proceedings pending this interlocutory appeal.

The parties agree that Miles M. had no prior record and that both trespass and disorderly conduct are punishable by a fine, imprisonment in a jail or house of correction for not more than six months, or both. See G. L. c. 266, § 120 (trespass "punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days or both such fine and imprisonment"); G. L. c. 272, § 53 (b ), as appearing in St. 2018, c. 69, § 160 ("Disorderly persons and disturbers of the peace shall, for a first offense, be punished by a fine of not more than $ 150").

The Juvenile Court judge who denied Miles's motion to dismiss the case and to stay the arraignment held that the amendment excluding from the definition of "delinquent child" a child who commits a "first offense of a misdemeanor for which the punishment is a fine, imprisonment in a jail or house of correction for not more than [six] months or both such fine and imprisonment," St. 2018, c. 69, § 72, did not apply to Miles's case. The judge reasoned that there are "no fines that are affixed under the juvenile law," and that offenses adjudicated in the Juvenile Court are not punishable by imprisonment for any period of time because the Department of Youth Services is a place of rehabilitation, and not of incarceration. However, in determining whether an individual may be adjudicated a "delinquent child" under the amended definition, a court must focus on the possible sentences under the particular statutes criminalizing an offender's conduct, not on the dispositions available to the Juvenile Court. Here, the statutes criminalizing trespass and disorderly conduct both provide for sentences in the form of a fine, imprisonment for not more than six months, or both. See G. L. c. 266, § 120 ; G. L. c. 272, § 53 (b ). Miles, therefore, would not qualify as a "delinquent child" under the amended definition provided for in § 72.
The Commonwealth concedes that the judge also "erred in concluding that the amendment applies only to civil infractions or school-based offenses."

We deem an amendment of a penal statute to constitute an implicit repeal where the amendment is inconsistent with the statute's earlier provisions. Commonwealth v. Bradley, 466 Mass. 551, 553, 998 N.E.2d 774 (2013). Here, however, the Legislature did not enact an amendment that was merely "inconsistent" with the former definition of "delinquent child." Instead, it struck the definition in its entirety and replaced it with a new one. We therefore consider the repeal of the former definition to be explicit.

The Commonwealth asserts that because Miles did not raise arguments concerning the nonpenal nature of Juvenile Court proceedings in his motion to dismiss or in his G. L. c. 211, § 3, petition, the issue whether to apply G. L. c. 4, § 6, Second, is not properly before this court. Because the applicability of G. L. c. 4, § 6, is a threshold issue we must evaluate in order to assess the Commonwealth's and the juveniles' claims under this statute, we address it here.

"If a child is adjudicated a delinquent child on a complaint, the court may ... commit him [or her] to the custody of the department of youth services" for no "longer than until such child attains the age of eighteen, or nineteen in the case of a child whose case is disposed of after he has attained his eighteenth birthday or age [twenty] in the case of a child whose case is disposed of after he has attained his nineteenth birthday." G. L. c. 119, § 58.

Because we conclude that G. L. c. 4, § 6, Second, is applicable here, we need not address the parties' common-law arguments.

We think it helpful to look to the statements of proponents of legislation in order to discern its purpose. See Bradley, 466 Mass. at 558-559, 998 N.E.2d 774. But we acknowledge the danger that, where there is broad disagreement on a legislative subject, a court could paint an incomplete picture of the intent behind a particular act by "cherry picking" statements of various legislators. See Conroy v. Aniskoff, 507 U.S. 511, 519, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (Scalia, J., concurring) (relying on legislators' statements can be described as "the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends"). Here, however, we did not cherry pick the legislators' remarks -- we focused on the statements of legislative leaders, and the parties do not dispute that one of the Legislature's aims was to reduce recidivism for juvenile offenders.

Having concluded that prospective application of St. 2018, c. 69, § 72, would be repugnant to its context, we need not address the juveniles' constitutional arguments.

In his G. L. c. 211, § 3, petition, Miles requested that the county court vacate his arraignment and expunge the charges of trespass and disorderly conduct from his delinquency record. Because Miles's arraignment took place on July 9, 2018, prior to the effective date of § 72, we decline to vacate it.