COMMONWEALTH *vs.* MAGNUS M., a juvenile.

Suffolk. November 7, 2011. - February 6, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Delinquent Child. Juvenile Court,* Delinquent child, Probation. *Practice, Criminal,* Juvenile delinquency proceeding, Continuance without a finding, Probation. *Statute,* Construction.

This court concluded that G. L. c. 119, § 58, empowers a Juvenile Court judge to continue a delinquency case without a finding and to place a juvenile under the supervision of the probation department after a trial on the delinquency complaint [461-464], including after a jury trial at which the jury rendered a verdict of delinquency [464-468].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on November 15, 2010.

The case was reported by *Spina*, J.

*Joseph A. Pieropan*, Assistant District Attorney, for the Commonwealth.

*Craig R. Bartolomei (Amy E. Winston* with him) for the juvenile.

*Barbara Kaban, Erica Cushna, & Gloria Tan*, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

CORDY, J. This case, here on the reservation and report of a single justice, requires us to decide whether G. L. c. 119, § 58, empowers a Juvenile Court judge to continue a delinquency case without a finding and place the juvenile under the supervision of the probation department, notwithstanding a jury's prior verdict of delinquency. Based on the text of the statute, its placement within the broader statutory scheme, and the underlying philosophy of our juvenile justice system, we conclude that it does.[1]

---

[1]We acknowledge the amicus brief submitted by the Committee for Public Counsel Services in support of the juvenile.

1. *Background.* The facts are not in dispute. On February 10, 2010, the juvenile was charged in a complaint with being a delinquent child for having violated G. L. c. 266, § 16, by breaking and entering a motor vehicle in the nighttime, with the intent to commit a felony. He was arraigned and entered a plea of "not true."

In May, 2010, the juvenile elected to be tried on the complaint by a jury. The trial commenced and concluded on September 29, 2010, with the jury returning a verdict of "delinquent." That same day, the judge who presided at the trial issued an order, over the Commonwealth's objection, that the juvenile's case be continued without a finding to April 19, 2011, and that the juvenile be placed under the supervision of the probation department with certain conditions.[2] The judge concluded that this disposition was authorized by G. L. c. 119, § 58 (§ 58), and was "consistent with the rehabilitative purpose of the juvenile delinquency system."

The first paragraph of § 58 reads, in relevant part: "At the hearing of a complaint against a child the court shall hear the testimony of any witnesses who appear and take such evidence relative to the case as shall be produced. If the allegations against a child are proved beyond a reasonable doubt, he may be adjudged a delinquent child, or in lieu thereof, the court may continue the case without a finding and, with the consent of the child and at least one of the child's parents or guardians, place said child on probation . . . ."

The Commonwealth asks that we interpret § 58 as "restrict-[ing] the authority of the Juvenile Court to continue delinquency proceedings without a finding only when the child tenders a pretrial plea or submission." To that end, it urges us to interpret the introductory phrase of § 58 — "[a]t the hearing of a complaint" — as limiting the application of its first paragraph to pretrial proceedings. In presenting its argument as such, the Commonwealth does not address the more relevant question whether § 58 allows a judge to continue a juvenile delinquency

---

[2]As special conditions of his probation, the juvenile had to obey "home rules," participate in a local stage company program, and earn his graduate equivalency diploma, "as able." The judge also scheduled a hearing to determine the amount of restitution owed and ordered the juvenile to complete fifty-six hours of community service (eight hours per month).

complaint without a finding after a *jury* trial. We proceed to address both questions, concluding that § 58 is not confined to pretrial proceedings and does attach to jury trials.[3]

2. *Discussion.* When interpreting any provision governing juvenile delinquency proceedings, we are guided by the two legislative pronouncements housed within G. L. c. 119, § 53. See *Metcalf* v. *Commonwealth*, 338 Mass. 648, 651 (1959) (*Metcalf*). The first is the mandate to construe the sections liberally so that children "as far as practicable, . . . shall be treated, not as criminals, but as children in need of aid, encouragement and guidance." G. L. c. 119, § 53. The second is the clear directive that proceedings against children "shall not be deemed criminal proceedings." *Id.*

From these pronouncements, the principal aim and underlying philosophy of our juvenile justice system become clear. See *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 666-667 (1978) (*Police Comm'r*); *Metcalf, supra* at 651-652. This is not a punitive scheme strictly akin to the adult criminal justice system. Rather, it is primarily rehabilitative, cognizant of the inherent differences between juvenile and adult offenders, and geared toward "the correction and redemption to society of delinquent children." *Metcalf, supra* at 651. See R.L. Ireland, Juvenile Law § 1.3 at 18 (2d ed. 2006) ("The rationale of [the dual system for adult and juvenile offenders] is diminished culpability: deviant behavior of children may be regarded as generally less culpable than similar adult behavior for the reason that a child's capacity to be culpable . . . is not as fixed or as absolute as that of an adult"). As a result, we have allowed "certain basic changes in the traditional method of dealing with criminal offenders," *Metcalf, supra*, and empowered Juvenile Court judges with "very broad discretion . . . with regard to disposition." *Police Comm'r, supra* at 667.[4]

With these principles in mind, we turn now to the language

[3]Given the premise of this case, we are concerned solely with a judge's authority to continue a juvenile delinquency matter without a finding *after* either a jury or jury-waived trial. Nothing in this opinion is meant to disrupt the requirements of G. L. c. 119, § 55B, or G. L. c. 276, § 87, which address pleas and probationary options *before* trial on a delinquency complaint.

[4]For these reasons, our cases that prohibit judges from continuing criminal cases (as distinguished from juvenile cases) without a finding after either a

and structure of § 58, presuming "as we must, that the Legislature intended what the words of the statute say." *Commonwealth* v. *Young*, 453 Mass. 707, 713 (2009), quoting *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 687 (1986). "Where a statute fails to specifically define its terms, 'we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose.' " *Guzman* v. *Commonwealth*, 458 Mass. 354, 361 (2010), quoting *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). We also interpret "words in a statute . . . in light of the other words surrounding them." *Commonwealth* v. *Brooks*, 366 Mass. 423, 428 (1974).

Because neither party contests that the plain language of § 58 provides for a continuance without a finding in some circumstances, we first focus our attention on the central dispute: does the phrase "[a]t the hearing of a complaint" encompass trial proceedings? The words "hearing" and "trial" are commonly ascribed different meanings,[5] yet they may, at times, "overlap." *McArthur Bros.* v. *Commonwealth*, 197 Mass. 137, 140 (1908). Given the context of the phrase, which properly informs our interpretation, we conclude that the Legislature intended such overlap in this instance.

The Legislature did not refer solely to a "hearing" in § 58. Rather, it referred to "the hearing of a complaint," and couched the language used to describe such a hearing in terms indicative of a trial: at this proceeding, "the court shall hear the testimony of any witnesses who appear and take such evidence relative to the case as shall be produced," and, to adjudge a child delinquent, "the allegations against [the] child [must be] proved beyond a reasonable doubt." G. L. c. 119, § 58. Although parties may present witnesses and evidence at a variety of pretrial hearings, including those at which a guilty plea is proffered, the inclusion of the reasonable doubt standard is significant. "Proof beyond a

jury or jury-waived trial are inapposite. See *Commonwealth* v. *Norrell*, 423 Mass. 725, 726-727 (1996); *Commonwealth* v. *LeRoy*, 376 Mass. 243, 245-247 (1978).

[5]"Hearing" is defined as a "judicial session . . . held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying." Black's Law Dictionary 788 (9th ed. 2009). "Trial" is defined as a "formal judicial examination of evidence and determination of legal claims in an adversary proceeding." *Id.* at 1644.

reasonable doubt" is not a common standard in most pretrial hearings and is not the standard employed to determine whether a judge may accept a guilty plea. It is, however, the standard employed to determine whether the Commonwealth at trial has proved that a child is delinquent. *In re Winship,* 397 U.S. 358, 365-368 (1970). *Commonwealth* v. *Rodriguez,* 376 Mass. 632, 635-636 n.4 (1978). The most natural reading of its appearance in § 58, then, is that the phrase "the hearing of a complaint" encompasses trials, and, consequently, that the statute permits a judge to grant a continuance without a finding after a trial on a juvenile delinquency complaint. See R.L. Ireland, Juvenile Law, *supra* at § 1.73 at 331 ("A continuance without a finding is a permissible dispositional option either where there has been an admission to sufficient facts or a trial"); K.B. Smith, Criminal Practice and Procedure § 60.45 (3d ed. 2007) ("If there is a trial on a complaint and the child is adjudged a delinquent child, the judge may continue the case without a finding").

The structure of § 58 further supports this conclusion. Section 58 is separated into three paragraphs, with the provisions at issue appearing in the first. The second and third paragraphs delineate the various sentencing options available once a child has been adjudged a delinquent child (second paragraph) or a youthful offender (third paragraph).[6]

Read together, these paragraphs evoke a clear progression. In the first paragraph, the Legislature dictates the manner in which a juvenile may be adjudged delinquent: the complaint must be heard, the testimony of witnesses and evidence may be taken, and the allegations must be proved beyond a reasonable doubt. G. L. c. 119, § 58. Once these conditions are met and the juvenile is formally adjudged delinquent, the second paragraph takes effect and the judge may place the case on file, place the child in the care of a probation officer, or commit the child to the Department of Youth Services. *Id.* To apply the first paragraph solely to pretrial proceedings and the second to posttrial proceedings would disrupt the logic of this statutory scheme. It would also, in effect, remove from G. L. c. 119 any provision governing a

---

[6]Because the statute does not provide for a continuance without a finding after an adjudication as a youthful offender, we need not discuss the third paragraph. G. L. c. 119, § 58.

trial whereby a child may be found delinquent after the presentation of witnesses and evidence, based on proof beyond a reasonable doubt.

Further, if the first paragraph of § 58 is confined to pretrial pleas or submissions, the provisions of G. L. c. 119, § 55B — which purport to govern pretrial pleas — would be rendered redundant. In that section, the Legislature has dictated that a child "shall plead not delinquent . . . provided, however, that a child with whom the Commonwealth cannot reach agreement for a recommended disposition shall be allowed to tender a plea together with a request for a specific disposition. Such request may include any disposition or dispositional terms within the court's jurisdiction, including, unless otherwise prohibited by law, a disposition request that a finding not be entered, but rather the case be continued without a finding . . . ." G. L. c. 119, § 55B. To read § 58 as also governing these circumstances would be inconsistent with the "well-established principle of statutory construction . . . that effect must be given to all of a statute's provisions, so that none will be 'inoperative' or 'superfluous.' " *Guzman* v. *Commonwealth*, 458 Mass. 354, 361 (2010), quoting *Wheatley* v. *Massachusetts Insurers Insolvency Fund*, 456 Mass. 594, 601 (2010). Therefore, our reading of § 58, which allows judicial discretion to continue a juvenile case without a finding after a trial, not only adheres to the text of that provision, but also respects the authority granted to judges under § 55B. See *Fordyce* v. *Hanover*, 457 Mass. 248, 258 (2010), quoting *DiFiore* v. *American Airlines, Inc.*, 454 Mass. 486, 491 (2009) ("Where possible, we construe the various provisions of a statute in harmony with one another, recognizing that the Legislature did not intend internal contradiction").[7]

Having concluded that § 58 authorizes a judge to continue a delinquency case without a finding after conducting a trial,[8] we must address the closer question whether this authority can be

[7]We see no merit in the Commonwealth's argument that the availability of a posttrial continuance without a finding will discourage juvenile offenders from engaging in pretrial negotiations with prosecutors or submitting pretrial pleas. We find it unlikely that a juvenile will forgo the certainty of a pretrial plea or continuance without a finding in the hopes of securing a posttrial continuance without a finding.

[8]Section 58 excludes from a judge's authority to continue a juvenile case

exercised following a verdict of delinquent rendered at the conclusion of a *jury* trial.[9] We conclude that it can.

At this stage in our analysis, it is prudent to consider the practical execution of the discretion granted to a judge presiding over a juvenile delinquency complaint under § 58. Once there has been a trial at which it has been proved beyond a reasonable doubt that a juvenile has committed an act of delinquency, the "court"[10] is empowered to forgo entering an adjudication of delinquency in favor of continuing the case without a finding. The statute, however, does not define what body — a jury or judge — must find sufficient facts for adjudicating a child delinquent. We read this silence as encompassing both scenarios. If a case is tried before a jury, it is the jury that decide whether the case against the juvenile has been proved beyond a reasonable doubt, and signify so by submitting a verdict of delinquent. If the case is tried before a judge, it is the judge who decides whether the case has been proved beyond a reasonable doubt and makes findings to that effect. For the purpose of exercising the statutory discretion to continue a case without a finding, these two cases are similarly situated: in both, the prosecution has sustained its statutory burden of proof, thus enabling the "court" (i.e., the judge) either to enter the adjudication of delinquency or continue the case without a finding.

This determination that the "allegations against a child are proved beyond a reasonable doubt" before either body is, therefore, a necessary prerequisite to continuing a juvenile case without a finding after trial. It enables a judge to "explicitly rule . . . that there are facts sufficient to warrant a finding of delinquent," a ruling that the judge should record as a formal docket entry. R.L. Ireland, Juvenile Law § 1.73 at 331 (2d ed.

without a finding certain crimes under G. L. c. 265. Our decision today does not affect this aspect of the statute: a judge only may exercise his or her discretion to continue a juvenile delinquency case after a trial within the statutorily prescribed limits.

[9]The Commonwealth does not argue this point, contending only that the first paragraph of § 58 applies "to pre-trial matters and that 'hearings' do not include trials, either by a jury or jury-waived."

[10]Read literally, the first paragraph of § 58 applies to trials before the "court," and the power of the "court" to continue a case without a finding in lieu of adjudging the juvenile a delinquent child. "Court" is defined in G. L. c. 119, § 52, as "a division of the juvenile court department."

2006). Immediately thereafter, the judge should enter the decision to continue the juvenile's complaint without a finding. *Id.* This procedure preserves the jury's verdict or the judge's finding for future adjudication. *Id.* A continuance without a finding is not an automatic dismissal. Rather, it and any resulting dismissal are conditioned on the juvenile's adherence to the probationary terms. Any violation of those terms would lead to the entry of a delinquency adjudication (based on either the jury verdict or judge's findings), and the imposition of a sentence or commitment.[11] Cf. *Commonwealth* v. *Powell*, 453 Mass. 320, 327 (2009) (accepting guilty plea before continuing criminal case and placing defendant on probation ensures that any violation of probationary terms would lead directly to adjudication of guilt and imposition of sentence).

Although this outcome may effectively supplant a jury verdict of delinquency, it nonetheless fulfils precisely the goal of the juvenile system of justice "to act in the best interests of children by encouraging and helping them to become law-abiding and productive members of society, and not to label and treat them as criminals." *Commonwealth* v. *Connor C.*, 432 Mass. 635, 646 (2000). Under the statutory scheme described above, the legislative mandates of § 53 — those instructing us to treat juvenile offenders as "children in need of aid, encouragement and guidance," and to differentiate between juvenile and criminal proceedings — are not hollow pronouncements. They are substantively meaningful directives from which "[i]mportant consequences" flow. *Metcalf*, 338 Mass. at 651. One such consequence is our consistent recognition of the "Juvenile Courts as forums in which, to the extent possible, the best interests of the child serve to guide disposition." *Police Comm'r, supra* at 666. As a result, we have preserved the "unique character of the post adjudication, dispositional phase of juvenile proceedings . . . despite a retreat from the strictly paternalistic notions formerly associated with the adjudicatory phase of delinquency proceedings." *Id.* at 667, citing *In re Gault*, 387 U.S. 1, 31 n.48

[11] "If the child complies with the terms imposed by the judge, and is not made the subject of another delinquency complaint prior to the final date, the case will be ordered dismissed upon the final date of the continuance without a finding period." R.L. Ireland, Juvenile Law § 1.73 at 332 (2d ed. 2006).

(1967). See *Department of Youth Servs.* v. *A Juvenile*, 384 Mass. 784, 790 (1981) ("judges have a broad dispositional function under the juvenile statutes").

Interpreting § 58 to allow judges to continue a juvenile case without a finding after either a jury or jury-waived trial adheres to these guiding principles. It grants judges the flexibility to place a juvenile under the continued supervision of the court, while offering the juvenile the benefit of a dismissal after compliance with the terms of the probation.[12] In doing so, it extends to judges a final opportunity to reflect on the child's social history and potential for rehabilitation, and entrusts to judges the decision to shield a child from the stigma and collateral consequences of a delinquency adjudication. *Commonwealth* v. *Connor C.*, *supra* at 642, citing *Metcalf*, *supra* at 652 ("distinction our law recognizes between child and adult adjudication exists partly to avoid . . . the attachment of criminal stigma to children who may be amenable to rehabilitation"). Such a dispositional option may be most appropriate in jury trials, where the jury may lack the expertise or experience of the Juvenile Court judge to conduct "a wide-ranging review of the child's social history and for his individualized treatment." *In re Winship*, 397 U.S. 358, 366 (1970). By allowing "[t]he judge's presumed expertise in weighing social and psychological factors [to] come into play where it counts — the dispositional phase," *In re Javier A.*, 159 Cal. App. 3d 913, 971 n.57 (1984), we ensure that, even when the jury cannot conduct such a review, Juvenile Court judges can fulfil the "broad mandate to act in furtherance of a child's welfare." *Police Comm'r*, *supra* at 667. Given this overriding philosophy, we discern no legislative intent or purpose to limit this well-recognized dispositional discretion solely to jury-waived trials. See *Surrey* v. *Lumbermens Mut. Cas. Co.*, 384 Mass. 171, 177 (1981) ("statutory words are to be given their usual and ordinary meaning

---

[12]Although he did not comment on the availability of a continuance without a finding after either a jury or jury-waived trial, Lieutenant Governor Thomas P. O'Neill, III (then acting Governor), who recommended the language the General Court ultimately adopted in § 58, noted that this provision "would provide our judicial system with an additional alternative disposition for certain juveniles" and that it would result in "more flexibility in dealing with juvenile offenders." 1976 House Doc. No. 5181 (letter to the Honorable Senate and House of Representatives).

considered in light of the aim to be accomplished by the Legislature").

3. *Conclusion.* For these reasons, we conclude that the judge had the authority under G. L. c. 119, § 58, to continue the juvenile's case without a finding and place the juvenile on probation, notwithstanding a jury verdict of delinquency. The case is remanded to the county court, where an order shall enter affirming the Juvenile Court judge's order.

*So ordered.*