NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

21-P-1113                                    Appeals Court

COMMONWEALTH vs. STEVE S., a juvenile.

No. 21-P-1113.

Essex.     October 5, 2023. – January 19, 2024.

Present: Wolohojian, Desmond, & Sacks, JJ.

Delinquent Child. Juvenile Court, Delinquent child. Practice,
    Criminal, Juvenile delinquency proceeding, Sentence,
    Retroactivity of judicial holding, Presumptions and burden
    of proof. Retroactivity of Judicial Holding.

Complaint received and sworn to in the Essex County
Division of the Juvenile Court Department on February 4, 2021.

The case was heard by Kerry A. Ahern, J., and a motion to
continue sentencing was heard by her.

Caroline I. Alpert for the juvenile.
Emily R. Mello, Assistant District Attorney, for the
Commonwealth.

WOLOHOJIAN, J. Approximately one month before his
eighteenth birthday, the juvenile was adjudicated delinquent for
having committed assault and battery on a family or household
member in violation of G. L. c. 265, § 13M (a). At the end of
the trial, the Commonwealth moved to continue sentencing until

after the juvenile turned eighteen.  The Juvenile Court judge allowed the motion after an evidentiary hearing.  She did so on the ground that the juvenile's desperate need of aid, encouragement, and guidance could not be satisfied in the limited time before he turned eighteen, and that it was in the juvenile's best interest to postpone sentencing so that he could obtain services necessary for his rehabilitation.  The juvenile has appealed.

While the appeal has been pending, the Supreme Judicial Court decided Noah N. v. Commonwealth, 489 Mass. 498 (2022) (Noah N.), in which it held that a judge is permitted to allow a continuance beyond a juvenile's eighteenth birthday for the sole purpose of extending the time of commitment, but only after the judge conducts an evidentiary hearing and makes express findings to the effect that the continuance is necessary to ensure the rehabilitation of the juvenile.  Id. at 502-503.  The court placed the burden on the Commonwealth to prove by clear and convincing evidence that continued commitment is necessary to ensure the juvenile's rehabilitation.  Id. at 503.

The juvenile argues that Noah N. announced a new rule that should not apply retroactively to him.  In the alternative, the juvenile argues that the requirements of Noah N. were not satisfied in this case.  Further, relying on Apprendi v. New Jersey, 530 U.S. 466 (2000) (Apprendi), the juvenile argues that

the framework established in Noah N. violates his rights under the Fifth and Sixth Amendments to the United States Constitution because it permits a judge to extend a sentence merely upon a showing by clear and convincing evidence, instead of reserving that determination to a jury upon proof beyond a reasonable doubt.  Finally, the juvenile argues that his due process rights were violated because the delay in sentencing gave the Commonwealth a "tactical advantage."  We affirm the adjudication of delinquency and the order allowing the motion to continue.[1]

Background.  On February 4, 2021, approximately four months before the juvenile was to turn eighteen, he was charged with assault and battery on a family or household member, in violation of G. L. c. 265, § 13M (a).  The juvenile and his counsel pursued a strategy to have the charge tried before he turned eighteen to attempt to prevent the judge from sentencing him beyond that age.  See G. L. c. 119, § 58.  To that end, believing that a bench trial was likely to be scheduled sooner than a jury trial, the juvenile waived his right to a jury trial.

---

[1] The Commonwealth agrees that this appeal is not moot, even though the juvenile's commitment to the custody of the Department of Youth Services (DYS) has ended, and he is now over twenty years old.  We are of the same view and conclude, for the reasons explained in Matter of a Minor, 484 Mass. 295, 299-300 (2020), that the juvenile has a surviving interest in establishing that the commitment order was not lawfully issued.

As the juvenile and his counsel hoped, the case was tried over two days approximately one month before the juvenile's eighteenth birthday.  At the conclusion of the trial, the judge adjudged the juvenile delinquent.  The juvenile does not challenge the adjudication of delinquency on appeal on evidentiary grounds, and we now recite the facts underlying the adjudication as the judge found them.[2]

In 2018, the juvenile -- six feet, two inches tall and weighing 210 pounds -- and the victim -- four feet, eleven inches tall and weighing 118 pounds -- began an intimate relationship.  The victim ended the relationship around January 2021, after she discovered that the juvenile had been cheating.  The following month, on February 3, 2021, the victim went to the juvenile's home to talk.  After a conversation lasting around fifteen to twenty minutes, the victim said she wanted to go home.  The juvenile grabbed her arm to prevent her from leaving and threw her onto his bed.  When the victim again attempted to leave and repeated that she wished to go home, the juvenile struck her, causing her to fall back onto the bed.  The juvenile then repeatedly punched, slapped, and spit at the victim, who went into a fetal position, covering her face with her arms.

---

[2] The judge made detailed and comprehensive written findings of fact in her decision on the motion to continue sentencing, and we draw our recitation of the facts from those findings.

Despite the victim's request that he stop, the juvenile continued to beat her while atop her and said, "[S]hut the fuck up bitch." Eventually, the juvenile stood up and told the victim, "I fucking love you, don't you fucking get it." When the victim then attempted to leave, the juvenile again called her a "bitch," punched her in the back of the head, and caused her to fall to her knees. He then grabbed the victim by the hair and dragged her through the bedroom. Eventually, the victim was able to leave the juvenile's room and called 911.[3] Officers responded quickly and found the victim crying, with visible scratches on her hand and both sides of her neck. The victim was taken to a hospital where she was treated for approximately three hours. At the time of the trial, she continued to suffer long-term injuries from the assault and was attending ongoing physical therapy twice a week for injury to her spine and for pain while sitting or walking.

The juvenile moved for immediate sentencing as soon as the judge adjudged the juvenile delinquent at the conclusion of the trial. The Commonwealth moved to stay sentencing until after the juvenile's eighteenth birthday, a request the juvenile opposed. At the beginning of the ensuing evidentiary hearing, before she allowed extensive argument from counsel, the judge

---

[3] Members of the juvenile's family attempted to interfere with the victim's 911 call.

stated that she was inclined to allow the motion and explained

her reasoning as follows:

> "So when I think about what transpired here -- this was a horrific beating that transpired involving an intimate partner of his -- the goals of the juvenile court are to make sure that [the juvenile] receives the treatment necessary in order to make sure that he has the services in place, that he gains insight as to what transpired here, to make sure that he goes on into adulthood he has the capacity, understanding, and ability to control himself and to engage in a safe and appropriate relationship with individuals of the opposite sex.
>
> "So I can't imagine that in three weeks, which I think is his -- his birthday is mid-June -- that that's going to be accomplished by sentencing him for a three-week sentence."

The judge also expressly stated that she was "not looking at

punishment, . . . [but] at engagement in services to make sure

that [the juvenile] engage[s] in intimate partner abuse

prevention, to make sure he receives the counseling necessary in

order to be able to prevent that type of thing."  The judge

repeated during the course of argument that "given the time

periods and the particulars of this case, I don't see that it

is[] reasonable in any way, shape, or form to commit him to

[the] D[epartment of] Y[outh] S[ervices] [DYS] for three weeks.

It wouldn't even entail the start of services in that time

period."[4]

---

[4] The judge also gave weight to the juvenile's delinquency record as well as to the fact that the juvenile had violated probation in the past and was therefore not a good candidate for probation.  The judge also considered that, even if probation

Counsel for the juvenile then asked to call a witness from DYS and to present additional evidence. The judge allowed both requests. Prior to the introduction of this evidence, the judge permitted the victim to make a victim impact statement. The victim laid out the details of the assault and its continuing psychological and physical effects. The judge then repeated the basis for her ruling to continue sentencing:

> "So again, as I stated, taking into consideration the nature and circumstances of this offense, the victim impact statement, the juvenile's delinquency record which, as I indicated, includes a continuation without a finding and a commitment to DYS for similar offenses, assault and battery type violent offenses, the lack of success that he has had on probation, and the concerns the [c]ourt has in not addressing the violence that has been on display here for the past two days,[5] I didn't think it serves his interests or meets the needs and interest of the [J]uvenile [C]ourt in committing him for three weeks."

The juvenile then presented additional evidence, including the testimony of the juvenile's DYS caseworker. The caseworker, who had worked with the juvenile for three years, testified that the juvenile would benefit from additional DYS services, including individual therapy, prosocial activities in the community, and family work. He also testified that, should the juvenile be

---

were available, a one-month probation would not allow sufficient services to rehabilitate the juvenile.

[5] The judge was apparently referring to the testimonial evidence of violence during the assault on the victim. The record does not suggest that there was violence on display in the courthouse during the trial.

committed to DYS custody after he turned eighteen, he would be released to the community with services after three to five months.[6]

After further discussion of issues that are not implicated in this appeal, the judge then allowed the Commonwealth's motion and continued sentencing to the day after the juvenile was to turn eighteen. The judge subsequently issued a detailed written memorandum of decision containing a nuanced analysis of the issue and explained, among other things, that her

> "paramount concern [wa]s that the [j]uvenile in this matter is in desperate need of aid, encouragement, and guidance. The purpose of committing a [j]uvenile after a finding of delinquency is not only correction, but the redemption to society of the offending child. These goals cannot be satisfied within the narrow window of time between when the juvenile was adjudicated delinquent and when he turns eighteen. Therefore, it would not be in the 'best interest' of the [j]uvenile here to move forward with sentencing that would fail to adequately 'encourag[e] and help[ ] [him] to become [a] law-abiding and productive member[ ] of society.'" (Quotation and citations omitted.)

See Commonwealth v. Magnus M., 461 Mass. 459, 461, 466 (2012).

Sentencing occurred on June 24, 2021, the day after the juvenile's eighteenth birthday, and the juvenile was committed to DYS custody until he turned nineteen. This appeal followed.

Discussion. The juvenile's overarching argument is that the judge abused her discretion or committed other error of law

---

[6] The juvenile argues, based on the caseworker's testimony, that should the judge continue sentencing, the juvenile would not receive services until the continued date.

by allowing the motion to continue sentencing until after the juvenile turned eighteen.  Within that overarching argument, the juvenile makes a number of subsidiary arguments that are in some form or fashion driven by the Supreme Judicial Court's decision in Noah N., which was decided after the judge allowed the motion to continue and while this appeal has been pending.  We accordingly begin our analysis with Noah N.

When the juvenile in Noah N. was seventeen years old, he was charged in a delinquency complaint with assault and battery on a family or household member.  See Noah N., 489 Mass. at 499. Approximately one month before he was to turn eighteen, he filed a tender of plea or admission to the charge.  Id.  The Commonwealth then requested a continuance of the change of plea hearing "for the express purpose of delaying the case's disposition until after the juvenile's eighteenth birthday." Id.  The Juvenile Court judge allowed the Commonwealth's motion, and accordingly, Noah's eighteenth birthday passed without his plea being tendered.  Id.  On appeal to the Supreme Judicial Court, Noah argued that because he had sought to tender a plea when he was seventeen, he should have benefited from the provisions of G. L. c. 119, § 58, second par., which required that any commitment to DYS custody end when he turned eighteen.[7]

_____

[7] General Laws c. 119, § 58, second par., provides in relevant part:

Noah N., supra at 501.  Noah argued that allowing a continuance

for the sole purpose of committing him until age nineteen was

contrary to the statute.  Id.

The Supreme Judicial Court noted that § 58 does not

expressly address continuances, stating,

> "This is understandable, as continuances are an ordinary
> aspect of an orderly judicial process.  If a case is
> continued for reasons related to the judicial process and
> unrelated to extending the time of commitment, then the
> statutory requirements for extending such time of
> commitment are clearly met.  Allowing continuances for the
> sole purpose of extending the commitment period are,
> however, different.  Such continuances, if they do not
> otherwise serve the purposes of the judicial process,
> intrude on the Legislature's authority to set limits on the
> time of commitment.  Allowing continuances for this reason
> alone raises the question whether the statutory language
> regarding disposal of cases is being manipulated to extend
> the time of commitment beyond what the Legislature
> intended."

Noah N., 489 Mass. at 501.  Accordingly, the court held that

> "[w]here a request for a continuance has nothing to do with
> the orderly disposition of the case, but rather is directed
> at the timing of the juvenile's impending eighteenth
> birthday, and at extending the time of commitment beyond
> that ordinarily authorized by statute, the ample discretion
> allowed Juvenile Court judges is tightly constrained.  A
> continuance may only be allowed in such circumstances if it

---

> "If a child is adjudicated a delinquent child on a
> complaint, the court . . . may commit him [or her] to the
> custody of [DYS], but the . . . commitment period shall not
> be for a period longer than until such child attains the
> age of eighteen, or nineteen in the case of a child whose
> case is disposed of after he [or she] has attained his [or
> her] eighteenth birthday or age [twenty] in the case of a
> child whose case is disposed of after he [or she] has
> attained his [or her] nineteenth birthday."

> is necessary to ensure the rehabilitation of the juvenile and express findings are made to that effect."

Id. at 502.  The court required that the judge hold an evidentiary hearing, and that the "Commonwealth bears the burden of proving by clear and convincing evidence the necessity of continued commitment to ensure the rehabilitation of the juvenile."  Id. at 503.

Noah N., as we have already noted, was decided after the judge in this case allowed the continuance on appeal here. There is no doubt that Noah N. announced new rules with respect to the legal standard for allowing a motion to continue for the sole purpose of extending the time for which a juvenile may be committed, to the need for an evidentiary hearing before allowing such a motion, and to the Commonwealth's burden of proof.[8]  See Commonwealth v. Sylvain, 466 Mass. 422, 428 (2013), S.C., 473 Mass. 832 (2016), quoting Teague v. Lane, 489 U.S.

---

[8] Prior to Noah N., continuances in delinquency proceedings needed only to be assessed against the requirements of the rules of criminal procedure, which permit continuances "only when based upon cause and only when necessary to insure that the interests of justice are served."  Mass. R. Crim. P. 10 (a) (1), 378 Mass. 861 (1979).  "In most cases, 'cause' refers to reasons related to the orderly processing of cases."  Noah N., 489 Mass. at 502.  Rehabilitation, which is the central purpose of juvenile justice, could and can satisfy rule 10 (a) (1)'s requirement that an extension be in "the interests of justice." Id.  However, prior to Noah N., there was no requirement that the Commonwealth prove the need for rehabilitation by clear and convincing evidence, or that the judge conduct an evidentiary hearing and make express findings regarding the need for rehabilitation.

288, 301 (1989) ("a case announces a new rule when it breaks new ground or imposes a new obligation . . . [or] if the result was not dictated by precedent existing at the time the [adjudication of delinquency] became final" [emphasis in original]).  Although a new rule does not generally have retroactive application, it will apply retroactively to cases -- such as this one -- that are pending on direct appeal when the new rule is announced. See Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 664 (2013), S.C., 471 Mass. 12 (2015).  We accordingly disagree with the juvenile's argument that Noah N. does not apply retroactively to him.

Alternatively, the juvenile argues that the requirements of Noah N. were not satisfied.  We begin by noting that the judge, with remarkable prescience, foresaw Noah N.'s core requirement that the continuance be necessary for the juvenile's rehabilitation.  Moreover, the judge anticipated and satisfied Noah N.'s requirements that she conduct an evidentiary hearing and make detailed findings.  In other words, the central purpose, thrust, and procedural safeguards of Noah N. were clearly satisfied.  But the juvenile contends that what happened here nonetheless fell short of what was required.  Specifically, the juvenile points to the fact that the Commonwealth presented no evidence during the evidentiary portion of the hearing on the motion to continue, and that the judge did not state the

evidentiary standard by which she assessed the juvenile's need for rehabilitation.  The juvenile argues that both shortcomings are fatal.

As to the first, although Noah N. clearly places the burden on the Commonwealth to prove by clear and convincing evidence that the continuance is necessary for the juvenile's rehabilitation, the opinion does not suggest that trial evidence cannot be used to meet the Commonwealth's burden.  Nor does Noah N. stand for the proposition that the Commonwealth must introduce evidence of the juvenile's need for rehabilitation twice:  once at trial, and again at the time of the evidentiary hearing on the motion to continue.  The circumstances in Noah N. were materially different than those presented here.  In Noah N., the motion to continue was filed pretrial, no evidentiary proceeding bearing on the juvenile's need for rehabilitation had yet occurred during the case and, as a result, there was no evidence upon which the judge could have made the required findings regarding the need for rehabilitation.  Here, by contrast, the motion to continue came directly on the heels of a bench trial during which ample evidence had been introduced to support the required findings regarding the juvenile's need for rehabilitation.  And, in addition, the judge was the trier of fact for both the trial and the motion to continue.

As to the second, it is true that the judge did not state that she was applying a clear and convincing standard in assessing the juvenile's need for rehabilitation.[9]  We have accordingly considered whether the matter should be remanded, because it is ordinarily for the trial court judge to make such a determination in the first instance -- not us.[10]  Cf. Adoption of Eden, 88 Mass. App. Ct. 293, 296 (2015) ("it is for the trial judge, not us, to determine in the first instance whether unfitness has been proven by clear and convincing evidence, and whether termination of parental rights is in the best interests of the children").  Importantly, the juvenile does not contend that any of the judge's extensive and detailed subsidiary findings made in connection with the motion to continue is clearly erroneous.  Nor does the juvenile challenge the subsidiary findings underlying the adjudication of delinquency that, as a matter of law, were required to be made upon proof beyond a reasonable doubt.  G. L. c. 119, § 58, first par.; Magnus M., 461 Mass. at 462-463.  In these circumstances, we are in sufficient position to review whether clear and convincing evidence supported the judge's ultimate determination that the

---

[9] This is no fault of the judge who, after all, did not have the benefit of Noah N. when acting on the motion to continue. See Noah N., 489 Mass. at 503 n.5.

[10] The juvenile does not seek a remand, which he views as an empty exercise since he has already turned twenty.

juvenile was in need of rehabilitation.  Cf. Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 657 & n.4 (2019) (where requirement of explicit finding on clear and convincing evidence not created until after administrative decision, court retains discretion to determine whether factual record is sufficiently clear that remand to apply heightened burden of proof is unnecessary).

"Proof by clear and convincing evidence is 'not without teeth[,]' . . . [and] [t]he evidence must be sufficient to convey a 'high degree of probability' that the contested proposition is true."  Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 309 (2015), quoting Callahan v. Westinghouse Broadcasting Co., 372 Mass. 582, 588 n.3 (1977).  This "means that '[t]he requisite proof must be strong and positive; it must be "full, clear and decisive."'" Adoption of Chad, 94 Mass. App. Ct. 828, 838 (2019), quoting Adoption of Iris, 43 Mass. App. Ct. 95, 105 (1997).  Without repeating the judge's findings, which we have already set out, the standard was easily met here.

The juvenile next argues that the Noah N. framework conflicts with the requirements of Apprendi, and violates his rights under the Fifth and Sixth Amendments because it permits a judge to extend a sentence merely upon a showing by clear and convincing evidence, instead of reserving that determination to

a jury upon proof beyond a reasonable doubt.  Apprendi holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi, 530 U.S. at 490.  See Commonwealth v. Denehy, 466 Mass. 723, 736 (2014), quoting Alleyne v. United States, 570 U.S. 99, 112, 114-115 (2013) (Apprendi applies to "any fact that aggravates the punishment, either by raising the floor or the ceiling, such that 'the fact . . . alters the prescribed range of sentences to which a criminal defendant is exposed'").  Cf. Lazlo L. v. Commonwealth, 482 Mass. 325, 330 (2019) ("a deprivation of liberty imposed by the State as a direct consequence of being found delinquent for having committed an offense necessarily includes an element of punishment"); Commonwealth v. Quincy Q., 434 Mass. 859, 864-865 (2001) (acknowledging that, under Apprendi, any fact necessary to increase delinquent juvenile's penalty beyond statutory maximum commitment to DYS must be proved to jury beyond reasonable doubt).  "The 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Southern Union Co. v. United States, 567 U.S. 343, 348 (2012), quoting Blakely v. Washington, 542 U.S. 296, 303 (2004).

Here, G. L. c. 119, § 58, limited the seventeen year old juvenile's potential sentence to a maximum commitment to DYS custody to age eighteen. Noah N., however, permits a judge to allow a continuance for the sole purpose of committing a juvenile beyond the statutory maximum if the judge finds, upon clear and convincing proof, that a longer period of commitment is necessary for the juvenile's rehabilitation. The juvenile's need for rehabilitation is not a fact reflected in the adjudication of delinquency for assault and battery on a household or family member. It follows, the juvenile argues, that the framework established in Noah N. is in conflict with Apprendi because the juvenile's need for rehabilitation should have been determined by a jury upon proof beyond a reasonable doubt.[11]

Whatever merit this interesting argument may have, it is not for us to decide it. "[W]e have no power to alter, overrule or decline to follow the holding of cases the Supreme Judicial Court has decided." Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485 (2003). It is for the Supreme Judicial Court to

---

[11] The juvenile does not attempt to explain what significance, if any, his waiver of trial by jury has on this argument. Nor does it appear he has considered whether requiring a jury trial on the question of rehabilitation could result in delay beyond the juvenile's eighteenth birthday itself affecting the juvenile's potential sentence.

determine whether <u>Noah N</u>. is in irreconcilable tension with <u>Apprendi</u>, not us.[12]

Finally, the juvenile argues that the continuance gave the Commonwealth a tactical advantage in violation of his due process rights.  The main weakness in this argument is that the juvenile fails to articulate what tactical advantage the Commonwealth obtained from the continuance.  Cf. <u>Commonwealth</u> v. <u>Imbruglia</u>, 377 Mass. 682, 691 (1979) (pretrial delay intentionally undertaken to gain tactical advantage is impermissible).  The case had already been tried, and the judge had already adjudged the juvenile delinquent before the Commonwealth moved for a continuance.  Furthermore, the juvenile misapprehends the purpose of the continuance, which was not to advantage the Commonwealth but to help ensure the juvenile's rehabilitation.

There was no error in the order allowing the motion for a continuance.

<u>Judgment affirmed</u>.

<u>Order allowing motion to continue sentencing affirmed</u>.

---

[12] We requested and received the briefs filed in <u>Noah N.</u>, and we note that the Supreme Judicial Court does not appear to have been alerted to the potential interplay between <u>Apprendi</u> and the standard for allowing a continuance for the sole purpose of extending sentence in a delinquency proceeding.