SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. QUAHIR Q., a juvenile

 
 Docket:
 SJC-13739
 
 
 Dates:
 September 5, 2025 – November 20, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Firearms. Practice, Criminal, Juvenile delinquency proceeding, Continuance without a finding, Sentence, Appeal by Commonwealth. Juvenile Court, Delinquent child. Delinquent Child. Statute, Construction.
 
 

       Complaint received and sworn to in the
Suffolk County Division of the Juvenile Court Department on March 28, 2022.
      A motion to revise or revoke sentence was
heard by Peter M. Coyne, J.
      The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.
      Molly Paris, Assistant District Attorney,
for the Commonwealth.
      Neil S. Tassel for the juvenile.
      Cristina F. Freitas & Debbie F. Freitas,
Committee for Public Counsel Services, for youth advocacy division of the
Committee for Public Counsel Services & another, amici curiae, submitted a
brief.
      Joseph N. Schneiderman, for K.S., amicus
curiae, submitted a brief.
      KAFKER, J. 
The issue presented is whether a Juvenile Court judge may impose a
continuance without a finding (CWOF) in a case in which a juvenile is charged
by a delinquency complaint with carrying a firearm without a license in
violation of G. L. c. 269, § 10 (a).  Based on the text and over-all structure of
the relevant criminal and juvenile statutes, the rehabilitative goals of the
juvenile justice system, and the statutory discretion granted to Juvenile Court
judges in the disposition context, we conclude that a CWOF is a lawful
disposition on such a § 10 (a) charge.[1]
      1. 
Background.  a.  Facts. 
On March 28, 2022, administrators at the Dearborn School in the Roxbury
section of Boston learned that a student might be in possession of a
weapon.  School administrators performed
an administrative search, which revealed that the juvenile possessed a nine
millimeter Glock pistol with six rounds of ammunition inside his "fanny
pack" on his person.  Consequently,
Boston police officers arrived at the school and the juvenile was arrested and
taken into custody. 
      In arguing for a CWOF in the instant case,
defense counsel explained that the juvenile had previously been subjected to
threats and assaults while taking public transportation to school.  Although the juvenile did not possess a
license to carry the firearm outside of his home or place of work, he did
possess a valid firearm identification (FID) card.[2]  After his arrest, with the help of his
parents and counsel, the juvenile was successfully readmitted to Boston public
schools, from which he subsequently graduated. 
Since his graduation, the juvenile has completed numerous occupational
trainings and worked part-time jobs.
      b. 
Procedural history.  A delinquency
complaint issued in the Juvenile Court, charging the juvenile with unlawful
possession of a firearm in violation of G. L. c. 269,
§ 10 (a) (count one); carrying a loaded firearm without a license in
violation of G. L. c. 269, § 10 (n) (count two); and
unlawful possession of ammunition in violation of G. L. c. 269,
§ 10 (h) (1) (count three).
      The juvenile tendered a plea
recommendation to the court in which he recommended a CWOF on the firearm
counts while the Commonwealth recommended commitment to the Department of Youth
Services (DYS) until the juvenile's nineteenth birthday.  Both parties agreed to a dismissal of the
ammunition offense in consideration of the plea.  With respect to count one, the Commonwealth
also filed a written response arguing that CWOFs are prohibited for juveniles
charged under G. L. c. 269, § 10 (a).
      The judge decided that a CWOF is a lawful
disposition for a juvenile who violates G. L. c. 269,
§ 10 (a).  The judge then
accepted the juvenile's tender, entered a CWOF until his nineteenth birthday as
to both counts one and two, and dismissed count three.  The Commonwealth's subsequent motion to
revise or revoke the sentence for count one pursuant to Mass. R. Crim.
P. 29, 365 Mass. 780 (1974), was denied.
      The Commonwealth timely appealed.  We transferred the matter to this court sua
sponte to address whether a judge in the Juvenile Court may impose a CWOF after
an admission to sufficient facts to support an adjudication of delinquency
under G. L. c. 269, § 10 (a).
      2. 
Discussion.  Delinquency proceedings
are governed by G. L. c. 119, §§ 52 through 63.  "When interpreting any provision
governing juvenile delinquency proceedings, we are guided by the two
legislative pronouncements housed within G. L. c. 119,
§ 53."  Commonwealth v. Magnus
M., 461 Mass. 459, 461 (2012).  First,
the provisions "shall be liberally construed" so that children,
"as far as practicable, . . . shall be treated, not as
criminals, but as children in need of aid, encouragement and
guidance."  G. L. c. 119,
§ 53.  Second, proceedings against
children "shall not be deemed criminal proceedings."  Id. 
These twin directives reflect "the principal aim and underlying
philosophy of our juvenile justice system," which is "primarily
rehabilitative, cognizant of the inherent differences between juvenile and
adult offenders, and geared toward 'the correction and redemption to society of
delinquent children.'"  Magnus M.,
supra, quoting Metcalf v. Commonwealth, 338 Mass. 648, 651 (1959).  "The aims of 'correction and redemption'
of delinquent children are to be accomplished in part by the very broad
discretion allowed Juvenile Court judges with regard to disposition
. . . 'to avoid attaching to [juveniles] the stigma of a
criminal.'"  Police Comm'r of Boston
v. Municipal Court of the Dorchester Dist., 374 Mass. 640, 667 (1978), quoting
Metcalf, supra.
      a. 
Standard of review.  Although the
Legislature has granted Juvenile Court judges "broad 'discretion
. . . to render individualized dispositions consistent with the best
interests of the child,'" Commonwealth v. Mogelinski, 466 Mass. 627, 631
(2013), quoting Commonwealth v. Hanson H., 464 Mass. 807, 808 (2013), this
court will of course not uphold a disposition if it is illegal, see
Commonwealth v. Walters, 479 Mass. 277, 280 (2018).  Because the legality of a juvenile's
disposition is a question of statutory interpretation, our review is de
novo.  See, e.g., Commonwealth v. Dones,
492 Mass. 291, 294 (2023), citing Commonwealth v. Beverly, 485 Mass. 1, 11
(2020).
      b. 
CWOFs allowed and precluded by G. L. c. 119, § 55B.  Dispositions in delinquent child cases are
governed by G. L. c. 119, §§ 55B and 58.  General Laws c. 119, § 55B,
describes available dispositions following the tender of a plea or admission to
sufficient facts, see Magnus M., 461 Mass. at 461 n.3 ("G. L.
c. 119, § 55B, . . . address[es] pleas . . .
before trial on a delinquency complaint"), and G. L. c. 119,
§ 58, sets forth, inter alia, the available dispositions once an
adjudication of delinquency has been made, see id. at 463-464.  Because the judge in this case imposed a CWOF
after he accepted the juvenile's pretrial admission, G. L. c. 119,
§ 55B, provides the appropriate dispositional framework and is the starting
point of our analysis.
      "Where the words [of a statute] are
'plain and unambiguous' in their meaning, we view them as 'conclusive as to
legislative intent'" (alteration in original).  Commonwealth v. Ambrose A., 495 Mass. 135,
138 (2024), quoting Commonwealth v. K.W., 490 Mass. 619, 624 (2022).  "We do not read into the statute
. . . words that the Legislature had an option to, but chose not to
include."  Dones, 492 Mass. at 297,
quoting Commonwealth v. Williams, 481 Mass. 799, 807-808 (2019).  Indeed, as a general matter, "[t]he
statutory expression of one thing is an implied exclusion of other things
omitted from the statute" (citation omitted).  Arrowood Indem. Co. v. Workers' Compensation
Trust Fund, 496 Mass. 222, 231–232 (2025).
      We begin with the plain text of the
statute.  The first paragraph of
§ 55B states, in relevant part: 
"A child who
is before the juvenile court on a delinquency complaint . . . shall
plead not delinquent . . . . 
[A] child with whom the commonwealth cannot reach agreement for a
recommended disposition shall be allowed to tender a plea together with a
request for a specific disposition.  Such
request may include any disposition or dispositional terms within the court's
jurisdiction, including, unless otherwise prohibited by law, a disposition
request that a finding not be entered, but rather the case be continued without
a finding to a specific date thereupon to be dismissed . . . ;
provided, however, that a complaint alleging a child to be a delinquent child
by reason of having violated the provisions of [G. L. c. 265, § 13B,
13B 1/2, 13B 3/4, 22A, 22B, 22C, 23, 23A, 23B, or 50,] shall not be placed
on file or continued without a finding."[3]
G. L.
c. 119, § 55B.  In other words,
a juvenile may request a CWOF upon tender of a plea or admission -- unless the
complaint alleges one of the enumerated offenses, which are all sex offenses,
or a CWOF is otherwise prohibited by law.
      In enumerating the offenses for which a
juvenile may not request a CWOF in G. L. c. 119, § 55B, the
Legislature did not include G. L. c. 269, § 10 (a), or any
other firearms offenses.  Likewise,
G. L. c. 119, § 58, first par., prohibits CWOFs for the same
enumerated offenses.[4]  The most natural
understanding of § 10 (a)'s omission from both lists is that it was
intentional and that the Legislature intended to prohibit CWOFs for the
enumerated sex offenses only.  See, e.g.,
Commonwealth v. Russ R., 433 Mass. 515, 521 (2001) (Legislature's omission of
term in enumerated list in statute "suggest[s] that it intended to
exclude" that term).  Had the
Legislature intended to prohibit CWOFs for juveniles charged under
§ 10 (a), it could have included § 10 (a) among the
excepted offenses.  We therefore conclude
that the Legislature did not intend to prohibit CWOFs for juveniles tendering a
plea or admission to sufficient facts for a § 10 (a) offense.[5]  For the reasons stated infra, we likewise
conclude that CWOFs in these circumstances are not "otherwise prohibited
by law," as referenced in G. L. c. 119, § 55B.
      c. 
CWOFs allowed and precluded by G. L. c. 269,
§ 10 (a) (6), and G. L. c. 119, § 58.  On appeal, the Commonwealth argues that the
CWOF in this case is unlawful because it violates G. L. c. 269, § 10 (a) (6),
which provides that "[p]rosecutions commenced under this subsection shall
neither be continued without a finding nor placed on file," and G. L.
c. 119, § 58, seventh par., which states that "[n]otwithstanding
any other provisions of this chapter, a person adjudicated a delinquent child
by reason of a violation of [G. L. c. 269, § 10 (a),] shall
be committed to [DYS]."  We conclude
that (1) the reference to "[p]rosecutions commenced under this
subsection" in G. L. c. 269, § 10 (a) (6), is to
adult criminal prosecutions and not juvenile delinquency proceedings, and
(2) G. L. c. 119, § 58, seventh par., requires the
commitment of a child to DYS after an adjudication of delinquency, but a CWOF
is not such an adjudication.
      i. 
G. L. c. 269, § 10 (a). 
In interpreting interconnected provisions, such as the ones on which the
Commonwealth relies here, we must "look to the language of the entire
statute, not just a single sentence, and attempt to interpret all of its terms
'harmoniously to effectuate the intent of the Legislature.'"  Hanson H., 464 Mass. at 810, quoting Russ R.,
433 Mass. at 520.
      The language preceding the CWOF
prohibition in § 10 (a) (6) supports the conclusion that the
CWOF prohibition was not intended to apply in juvenile delinquency proceedings,
because the preceding provision plainly does not apply in such proceedings.  The statute specifically states that those
prosecuted under the subsection "shall be punished by imprisonment in the
state prison for not less than two and one-half years nor more than five years,
or for not less than [eighteen] months nor more than two and one-half years in
a jail or house of correction." 
G. L. c. 269, § 10 (a) (6).  In the Juvenile Court, only adjudicated
youthful offenders can be punished by imprisonment in a State prison, jail, or
house of correction.  See G. L.
c. 119, § 58 (a).  See
also Commonwealth v. Connor C., 432 Mass. 635, 638 (2000) ("The most
severe option grants a judge authority to punish the child [adjudicated a
youthful offender] by . . . the punishment the child would receive
were he an adult").  Where a
juvenile is charged only by a delinquency complaint, the juvenile can only be
committed to DYS, and not to jail or a house of correction.  See G. L. c. 119, § 58.  In sum, the Commonwealth's reading would
mistakenly extend § 10 (a) (6)'s prohibition of CWOFs in criminal
prosecutions requiring imprisonment in jail or a house of correction to
juvenile delinquency proceedings.
      ii. 
G. L. c. 119, § 58.  We
turn next to the Commonwealth's argument that G. L. c. 119,
§ 58, seventh par., precludes CWOFs. 
By it plain terms, it does not. 
Instead, the first paragraph of § 58 provides:  "If the allegations against a child are
proved beyond a reasonable doubt, he may be adjudged a delinquent child, or in
lieu thereof, the court may continue the case without a finding . . . ."  The seventh paragraph of § 58 further
provides:  "Notwithstanding any
other provisions of this chapter, a person adjudicated a delinquent child by
reason of a violation of [G. L. c. 269, § 10 (a),] shall be
committed to [DYS]."  Thus, the
seventh paragraph expressly cabins its requirement of commitment to DYS and its
prohibition against CWOFs to cases where "a person [has been] adjudicated
a delinquent child" (emphasis added).
      Neither paragraph precludes CWOFs prior to
an adjudication of delinquency.  The
former expressly allows CWOFs, and the latter requires commitment to DYS only
after an adjudication of delinquency.  In
the instant case, the judge exercised the choice provided by the first
paragraph to continue the case without a finding rather than adjudge the child
delinquent.  In short, the seventh
paragraph was inapplicable as there was no adjudication of delinquency.
      Our prior decisions interpreting § 58
support the broad exercise of discretion to order a CWOF "to shield a
child from the stigma and collateral consequences of a delinquency
adjudication."  See, e.g., Magnus
M., 461 Mass. at 467.  See also R.L.
Ireland, Juvenile Law § 1.73, at 331 (2d ed. 2006) ("If there are
facts sufficient for an adjudication of delinquent . . . , the court
may, instead of making an adjudication of delinquent, continue the case without
a finding . . .").
      Without in any way minimizing the dangers
presented by the juvenile bringing a firearm to school, we cannot therefore
conclude that the statute precludes the exercise of the judge's discretion to
issue a CWOF in the instant case.
      We emphasize that the Legislature has, in
G. L. c. 119, § 58, itself as well as § 55B of the same
chapter, expressly prohibited CWOFs altogether for certain enumerated sex
offenses, but not G. L. c. 269, § 10 (a).  By contrast, § 58, seventh par.,
prohibits CWOFs for § 10 (a) offenses only for "a person
adjudicated a delinquent child." 
"Where the Legislature used different language in different
paragraphs of the same statute, it intended different meanings."  Commonwealth v. Williamson, 462 Mass. 676,
682 (2012).  This difference indicates
the Legislature's intent that the seventh paragraph take effect only after a
juvenile has been adjudicated delinquent.
      Our construction is bolstered by
G. L. c. 119, § 53, which runs counter to the Commonwealth's
interpretation of the seventh paragraph of § 58.  Juveniles in the juvenile justice system must
be "treated, not as criminals, but as children in need of aid,
encouragement and guidance." 
G. L. c. 119, § 53. 
As we have explained on numerous occasions:  "[c]onsonant with that command is the
principle, woven into the fabric of our juvenile justice system, that a
Juvenile Court judge has broad discretion regarding the disposition of a case
in order to ensure that the rehabilitative aim of § 53 is
realized."  Commonwealth v. Samuel
S., 476 Mass. 497, 506-507 (2017). 
      3. 
Conclusion.  For these reasons, we
conclude that the judge had the authority under G. L. c. 119,
§§ 55B and 58, to continue the juvenile's case without a finding,
notwithstanding the juvenile's admission to sufficient facts for an
adjudication of delinquency under G. L. c. 269, § 10 (a).  We therefore affirm the order denying the
Commonwealth's motion to revise or revoke the juvenile's sentence.
So ordered.

footnotes
[1] We
acknowledge the amicus briefs submitted by the youth advocacy division of the
Committee for Public Counsel Services and Citizens for Juvenile Justice, and by
K.S.

[2] An FID card
entitles a person to possess certain nonlarge capacity firearms and
ammunition.  G. L. c. 140,
§ 129B (6), as amended through St. 2018, c. 123, §§ 9, 10.  See G. L. c. 140,
§ 129B (a), as amended through St. 2024, c. 135, § 44 (effective Oct.
2, 2024).  A person from the age of
fourteen to seventeen may apply for an FID card with a parent or guardian's
permission, provided that such person is not issued the FID card until he or
she is fifteen years old.  G. L.
c. 140, § 129B (1) (iv)-(v), as amended through St. 2018,
c. 123, §§ 9, 10.  See
G. L. c. 140, § 129B (a), as amended through St. 2024,
c. 135, § 44.  A license to carry,
available only to  individuals twenty-one
and older, entitles a license holder to possess large capacity firearms,
including handguns.  G. L.
c. 140, § 131 (d) (iv), as amended through St. 2018,
c. 123, §§ 11, 12.  G. L.
c. 140, § 131 (d), as amended through St. 2024, c. 135, § 49
(effective Oct. 2, 2024).

[3] General Laws
c. 119, § 55B, second par., clarifies that a "statement
consisting of an admission of facts sufficient for a finding of delinquency
. . . shall be deemed a tender of plea for purposes of the procedures
set forth in this section."

[4]
General Laws c. 119, § 58, first par., provides, in relevant
part:
"At the
hearing of a complaint against a child the court shall hear the testimony of
any witnesses who appear and take such evidence relative to the case as shall
be produced.  If the allegations against
a child are proved beyond a reasonable doubt, he may be adjudged a delinquent
child, or in lieu thereof, the court may continue the case without a finding
and, with the consent of the child and at least one of the child's parents or
guardians, place said child on probation; provided, however, . . .
that a complaint alleging a child to be a delinquent child by reason of having
violated the provisions of [G. L. c. 265, § 13B, 13B 1/2, 13B 3/4,
22A, 22B, 22C, 23, 23A, 23B, or 50,] shall not be placed on file or continued
without a finding."

[5] Because the
statutory language is clear, we "need not consult its legislative
history."  Garcia v. Steele, 492
Mass. 322, 328 n.7 (2023).